# EXHIBIT B

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA      :     13-CR-602 (RJD)
 4                                       13-MC-1011

 5       -against-                       U.S. Courthouse
                                   :
 6                                       Brooklyn, New York
     CHARLES GORDON BLAZER
 7                                       SEALED PROCEEDING
                 Defendant        :
 8                                       November 25, 2013
     - - - - - - - - - - - - - - - X     10:00 a.m.
 9

10   BEFORE:
             HONORABLE RAYMOND J. DEARIE
11           United States District Judge

12

13   APPEARANCES:

14   For the Government:       LORETTA E. LYNCH
                               United States Attorney
15                             271 Cadman Plaza East
                               Brooklyn, New York 11201
16                             BY:  EVAN NORRIS
                                    DARREN LaVERNE
17                                  AMANDA HECTOR
                                    Assistant U.S. Attorneys
18

19

20   For the Defendant:       FRIEDMAN KAPLAN SEILER
                               & ADELMAN LLP
21                             7 Times Square
                               New York, New York 10036-6516
22                             BY:  ERIC CORNGOLD
                                    MARY E. MULLIGAN
23                                  ELIZABETH LOSEY
                                         AND
24                                  STUART FRIEDMAN

25
```

1  Court Reporter:              RONALD E. TOLKIN, RPR, RMR, CRR
                                Official Court Reporter
2                               225 Cadman Plaza East
                                Brooklyn, New York 11201
3                               718-613-2647

4                                   * * *

5          THE CLERK:  We are on this morning for a motion to

6   close the courtroom under docket number 13-MC-1011.

7          Can I ask the attorneys please to note your

8   appearance for the record, beginning with counsel for the

9   government.

10         MR. NORRIS:  For the government, Evan Norris, Amanda

11  Hector, and Darren Laverne.

12         Good morning, Your Honor.

13         THE COURT:  Good morning.

14         MR. CORNGOLD:  Your Honor, we are here for the

15  defendant, Eric Corngold, Mary Mulligan, and Elizabeth Losey

16  from Friedman Kaplan.  This is Stuart Friedman who is with us.

17         THE COURT:  Mr. Friedman's role is?

18         MR. CORNGOLD:  He represents the defendants also.

19         THE COURT:  Welcome all.

20         We are missing one person.  I assume he is with us?

21         MR. CORNGOLD:  Yes.

22         THE COURT:  Well, somewhat to my surprise I don't

23  know who the young woman sitting on the front bench.

24         MS. MULLIGAN:  She is the Pretrial Services Officer,

25  Ms. Perez.

Case 1:13-cr-02604/FK-SMG Document 18 Filed 06/04/18 Page 4 of 41 PageID #: 82

1          THE COURT:  Ms. Perez, good morning.

2          THE CLERK:  Ms. Perez, you can come closer.  You can

3     have a seat at the table.

4          THE COURT:  Somewhat to my surprise but perhaps the

5     situation will be corrected momentarily, we are in an empty

6     courtroom although a very public courtroom.  The government

7     has served notice, which they are entitled.  The Court has

8     certainly scheduled this matter on the public calendar, the

9     motion to close the courtroom.

10          We have learned in our experience that the

11     government doesn't make these motions very often, nor does the

12     Court grant them very often.  Maybe that explains our apparent

13     apathy.

14          Is there anything that anybody wants to add to this

15     subsequent motion?

16          Mr. Corngold --

17          MR. CORNGOLD:  No, Your Honor.

18          THE COURT:  Do you join in it?

19          MR. CORNGOLD:  Yes, Your Honor.

20          THE COURT:  Is there anything that the government

21     wishes to add?

22          MR. NORRIS:  Nothing substantively to the motion.  I

23     just add, Your Honor, as of Thursday, November 21st, the

24     public docket sheet in this matter did reflect that there

25     would be a motion to close the courtroom, and it noticed the

1   date and time and location of today's hearing.  Subsequently,

2   on Friday, the court's public calendar reflected that same

3   information.

4            THE COURT:  Thank you.

5            For the record other than court personnel, pretrial,

6   my law clerk, and the Court Security Officer, and

7   representatives of the U.S. Attorney's Office, the Court

8   Reporter, and my staff we are otherwise alone in this public

9   courtroom.

10           Less I forget in granting the motion, after I made

11   my findings, I will direct the sealing of these minutes.

12   Presumably authorize the production of two copies, one to the

13   government and one to Mr. Corngold pending further order of

14   the Court, and the safeguarding of all or any computers or

15   other Court Reporter source material relative to the

16   preparation of these minutes.

17           I read the government's application.  Suffice it to

18   say, in my view, we have not only complied with the notice

19   requirements, that the findings that I need to make are

20   readily made here, given the government's presentation in its

21   letter motion to the Court dated November 21, 2013.

22           I read that letter a number of times, I read the

23   proposed information and the draft order.  I find that a

24   public proceeding in this matter including but not limited to

25   the identification of the defendant, would severely if not

U.S.A. v. CHARLES BLAZER                                    5

1   irreparably prejudice an ongoing investigation by the United

2   States Attorney's Office and presumably the Grand Jury sitting

3   here in the Eastern District of New York.

4           Both the nature of the investigation, the identify

5   of the defendant himself, and the surrounding circumstances

6   given the breathe of the investigation make it clear to me

7   that any public release of information at this time would, as

8   I say, irreparably damage that investigation, and the

9   effectiveness of any prosecution thereafter to follow.

10          I cannot for the life of me at this point given the

11  information provided to me consider any alternative to sealing

12  that would reasonable safeguard the interest at stake, the

13  integrity of the investigation.  I think I can say, and it is

14  compelling too, that the prejudice to the public by a public

15  proceeding significantly outweighs the First Amendment rights

16  of the public and the media through their access at this time.

17  Needless to say, the application and my granting of that

18  application will be for a limited duration as being possible.

19  In that regard I charge counsel, the United States Attorney,

20  and Mr. Corngold, and all counsel for the defendant to bring

21  to the Court's attention any information that may definitely

22  from here on out, that could in anyway conceivably alter the

23  Court's finding or make an adjustment to the relief that I am

24  now granting appropriate.

25          That having been said I will grant the motion having

U.S.A. v. CHARLES BLAZER                                    6

1   made, I believe, what are the required findings.  In this

2   particular case I make without hesitation, and I will sign the

3   order accordingly.

4           Elie, seal the courtroom.

5           THE CLERK:  Certainly.

6           Do you have the keys to lock the courtroom?

7           COURT SECURITY OFFICER:  It is locked.

8           THE CLERK:  Judge Dearie, the courtroom is locked.

9           THE COURT:  Was it locked before I made the

10  findings?

11          COURT SECURITY OFFICER:  I did, Your Honor.

12          THE COURT:  Just now?

13          COURT SECURITY OFFICER:  Yes, Your Honor.

14          THE COURT:  Is everybody satisfied?

15          Will you do me a favor and just open the door, and

16  see if there is anybody lusting about in the hallway yearning

17  to get in here.

18          COURT SECURITY OFFICER:  Yes, Your Honor.

19          THE COURT:  Monday morning at 10 after 10 you would

20  think we are in the middle of the night.

21          COURT SECURITY OFFICER:  No one out there, Your

22  Honor.

23          THE COURT:  The hallways is empty.  Now the

24  courtroom is sealed?

25          COURT SECURITY OFFICER:  Yes it is.

U.S.A. v. CHARLES BLAZER                                    7

1       THE COURT:  And the order is signed.

2       MS. MULLIGAN:  Thank you, Your Honor.

3       MR. NORRIS:  Thank you, Your Honor.

4       THE COURT:  That brings us to Mr. Blazer.

5       (Whereupon the defendant, Mr. Charles Blazer, enters

6   the courtroom.)

7       Mr. Blazer, good morning.

8       THE DEFENDANT:  Good morning, sir.

9       THE COURT:  I have, as you probably know, just

10  moment ago entertained a joint application by the United

11  States Attorney and your defense team to seal the proceedings,

12  which I have granted.  We are now ready to proceed.  With that

13  I will turn it over to counsel.

14      I take it we have arrived at a disposition?

15      MR. NORRIS:  We have, Your Honor.

16      THE CLERK:  Mr. Norris, excuse me for one second.  I

17  don't have a copy of the charging instrument.  Could you just

18  put the docket number on the record, please.

19      MR. NORRIS:  We have a signed copy for Your Honor as

20  well.  I think I previously provided a draft copy.

21      THE COURT:  The docket number is 13-CR-602.  The

22  defendant's name is Charles Blazer, B-L-A-Z-E-R.

23      THE CLERK:  I am sorry.

24      THE COURT:  Swear the defendant.

25      THE CLERK:  Please raise your right right-hand.

1          (Defendant sworn to answer truthfully.)

2          THE WITNESS:  I do.

3          THE CLERK:  Thank you.

4          THE COURT:  Mr. Blazer, I know counsel has told you

5    that I have to ask you some questions.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Quite a number of questions, actually.

8    If there is anything that I say that is not crystal clear to

9    you, don't hesitate to interrupt me.  I will do my best to

10   explain, clarify.

11         If you wish at anytime -- I just want to make sure

12   we identify everybody in the courtroom.  The gentlemen I

13   assume are agents?

14         MR. NORRIS:  Yes, Your Honor.  The two gentlemen

15   that have entered are agents with the IRS and FBI.  They are

16   part of our team.  There are three agents here, Your Honor.

17         THE COURT:  Thank you, gentlemen.

18         Other than that we are here with the same persons

19   identified earlier.

20         If you wish to talk to your lawyer at anytime or

21   lawyers, just ask me and I will give you whatever time you

22   need to talk privately with them.

23         THE DEFENDANT:  Thank you.

24         THE COURT:  We are in no hurry.  This is obviously

25   an important proceeding to you.  I assume you understand that.

U.S.A. v. CHARLES BLAZER                                                    9

1        THE DEFENDANT:  I do.

2        THE COURT:  In that spirit please don't hesitate to

3   interrupt, ask questions, and seek time to confer with

4   counsel.

5        You are now under oath.  That means that your

6   answers to my questions must be truthful.  If they were not in

7   any material way, you could subject yourself to additional

8   criminal charges for the offense of perjury, which is lying

9   while under oath.

10       Do you understand that?

11       THE DEFENDANT:  I do, sir.

12       THE COURT:  Let me begin first of all, sir, by

13  asking you to state your full name.

14       THE DEFENDANT:  Charles Gordon Blazer.

15       THE COURT:  How old are you, sir?

16       THE DEFENDANT:  68.

17       THE COURT:  You are the second person I know, I

18  being the first one, to actually stop on that question.  I

19  guess it is some sort of a Freudian block.

20       THE DEFENDANT:  It is.

21       THE COURT:  What schooling or formal education have

22  you had?

23       THE DEFENDANT:  Partially through graduate school.

24       THE COURT:  Here in the states?

25       THE DEFENDANT:  Yes, sir, in New York.

1          THE COURT:  How would you describe your health?  I

2   know you are wheelchair bound.

3          Tell me about your health.

4          THE DEFENDANT:  My health has two sides to it.

5   Personally I have rectal cancer.  I am being treated.  I have

6   gone through 20 weeks of chemotherapy, and I am looking pretty

7   good for that.  I am now in the process of radiation, and the

8   prognoses is good.

9          At the same time I have a variety of other less

10  significant ailments dealing with Diabetes II and coronary

11  artery disease but holding up reasonably well.

12         THE COURT:  Good luck.

13         THE DEFENDANT:  Thank you.

14         THE COURT:  Are you taking daily medication?

15         THE DEFENDANT:  I do.

16         THE COURT:  Does your medication in any way effect

17  your ability to concentrate on what I am saying?

18         THE DEFENDANT:  No, it does not.

19         THE COURT:  Are you physically comfortable now?

20         THE DEFENDANT:  Yes, I am.

21         THE COURT:  So you are able to concentrate and

22  participate in this proceeding given the gravity of this

23  matter?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  In your discussions with counsel are you

U.S.A. v. CHARLES BLAZER                                         11

1   satisfied with their representation?

2              THE DEFENDANT:  I am.

3              THE COURT:  Counsel, are you satisfied that Mr.

4   Blazer's fully understands the rights he will be waiving by

5   waiving indictment and pleading guilty, and he is fully

6   competent to proceed?

7              MR. CORNGOLD:  We are, Your Honor.

8              THE COURT:  Now Mr. Blazer, again, as I am sure you

9   were told, the first order of business here is what we

10  commonly refer to as a waiver of indictment.

11              The charges in the Information are felony charges.

12  Meaning that they carry with them a potential sentence in

13  excess of one year.  You have an absolute right to have a

14  grand jury determine whether or not you will be charged with

15  any felony.  The United States Attorney absent your waiver of

16  that right does not have the legal authority or power to

17  charge you or anyone with a felony.

18              Do you understand what I am saying?

19              THE DEFENDANT:  I do.

20              THE COURT:  Now you indicated to counsel your

21  willingness to waive that right, but I am obliged to tell you

22  a few things about the grand jury which no doubt you already

23  know but none the less here we go.

24              A grand jury does not determine whether you are

25  guilty of any crime or not.  The role of the grand jury is to

1    determine, among other things, whether or not there is

2    probable cause to believe that you committed an offense.  When

3    and if and only if the grand jury determines that there is

4    probable cause to believe that you committed an offense, would

5    the grand jury then be lawfully empowered to charge you with a

6    felony violation.

7            A grand jury is composed of a maximum of 23 people

8    drawn from the community, more or less like any other jury.

9    There must be 16 grand jurors present to constitute a lawful

10   quorum for hearing business, and 12 of those grand jurors must

11   agree that there is probable cause before they could charge

12   you with any felony.

13           Do you understand that?

14           THE DEFENDANT:  I do.

15           THE COURT:  I guess in the simplest terms that

16   means, if given the opportunity the grand jury might or might

17   not indict you for a felony, you or any other felon.

18           Do you understand?

19           THE DEFENDANT:  I do.

20           THE COURT:  If they chose not to for any reason, as

21   I said before, the United States Attorney could not charge you

22   with a felony.  They could re-present the case to a grand

23   jury, to the same grand jury, to another grand jury, they

24   could supplement their presentation of evidence before the

25   grand jury.  They could do a number of things in an attempt to

1   satisfy the grand jury probable cause standard but they could

2   not charge you with any felony.

3          Do you understand that?

4          THE DEFENDANT:  I do.

5          THE COURT:  Have you spoken with counsel about this

6   waiver of indictment?

7          THE DEFENDANT:  I have.

8          THE COURT:  Do you feel confident that you

9   understand your rights before that body?

10          THE DEFENDANT:  I do.

11          THE COURT:  The grand jury isn't a trial in any

12   sense of the words, it is not an adversarial proceeding.  Your

13   lawyer is not there should you wish to testify before the

14   grand jury, as you would be in a position to request.

15          A grand jury only hears witnesses presented by the

16   United States Attorney, and based upon the questioning of the

17   United States Attorney the basis of that presentation

18   determines whether or not to charge a felony.

19          Do you understand that?

20          THE DEFENDANT:  I do.

21          THE COURT:  Knowing all this are you prepared to

22   waive your right to proceed before the Grand Jury?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Are you confident that you understand

25   that right and you have no questions for me about it?

U.S.A. v. CHARLES BLAZER                          14

1        THE DEFENDANT:  That is correct.

2        THE COURT:  Counsel, any reservations in your mind

3   about Mr. Blazer's understanding of the nature of the rights

4   he is prepared, apparently, to waive?

5        MR. CORNGOLD:  We have no reservations, Your Honor.

6        THE COURT:  Accordingly then I find that the

7   defendant is fully aware of his rights to proceed before the

8   Grand Jury and has voluntarily, and in the presence and with

9   the assistance of counsel has voluntarily waived that right

10  and, accordingly, the waiver of indictment is accepted by the

11  Court.  Give me just a second I will so indicate by adding my

12  signature to the writ.

13       One of the things that I neglected to mention is now

14  that you waived indictment, and we proceed, we proceed just as

15  if you were indicted for these offenses.

16       Do you understand that?

17       THE DEFENDANT:  Yes, I do.

18       THE COURT:  Having said that, Mr. Blazer, we will

19  get to the next series of questions which are really designed

20  to establish as a matter of record that you fully understand

21  the rights that you give up by pleading guilty.

22       Bear with me while I put these questions to you.

23  Obviously, you now have a right absolutely to plead not guilty

24  to the charges.

25       Do you understand that?

U.S.A. v. CHARLES BLAZER                                    15

1        THE DEFENDANT:  I do.

2        THE COURT:  I realize that may not be your stated

3    intention but you have a right to call it all off as you sit

4    here right now.

5        Do you understand what I am saying?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  If you were to plead not guilty to the

8    charges you would be entitled to a speedy and public trial by

9    a jury with the assistance of counsel on the charges reflected

10   in the Information and perhaps on other charges that the U.S.

11   Attorney might seek from the Grand Jury.

12       Do you understand that?

13       THE DEFENDANT:  I do.

14       THE COURT:  At trial you would be presumed innocent

15   of all charges.  The government would have to overcome or try

16   to overcome this presumption of innocence and prove you guilty

17   by competent evidence and beyond a reasonable doubt.

18       You, sir, would not be required to prove a thing.

19   You could sit back and do nothing and say nothing, and simply

20   put the government to the burden of trying to convince the

21   jury of your guilt.

22       Do you understand that?

23       THE DEFENDANT:  I do.

24       THE COURT:  That means that if the government were

25   to fail in anyway practical or technical or not, the jury

U.S.A. v. CHARLES BLAZER                                16

1   would be required under my instructions to find you not

2   guilty.

3          Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  In the course of a trial witnesses for

6   the government would have to come here to Court and, of

7   course, testify under oath in your presence and the presence

8   of counsel.  You would have the right, therefore, to confront

9   each of these witnesses face-to-face here in the courtroom.

10  You would have the right through counsel to cross examine each

11  of the government witnesses and, when appropriate, to object

12  to evidence offered by the government.

13         You have the right to offer evidence in your own

14  defense.  In that regard, you have the right to compel the

15  attendance of witnesses and the production of evidence under

16  court order or subpoena, as we commonly refer to them.

17         At the trial you would have the right to testify if

18  you chose to do so and only if you chose to do so.  The

19  decision whether or not to testify at trial is yours to make,

20  it is not counsel's.  It is a decision that you obviously make

21  in consultation with counsel, but just like the decision to

22  plead guilty or not to plead guilty, it is a personal decision

23  that you make.

24         Do you understand that?

25         THE DEFENDANT:  Yes, I do.

U.S.A. v. CHARLES BLAZER                               17

1          THE COURT:  If you chose in consultation with

2    counsel not to testify, as is your constitutional right to

3    remain silent, no one can make you testify, not your lawyer,

4    the government's lawyer or the Court.

5          Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  As I said, if you chose to avail

8    yourself of that right I would instruct the jury if requested

9    by counsel, and he likely would, in the strongest possible

10   terms that under no circumstances could they the jury hold

11   your decision against you.

12         Do you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  All right.  Now having said that if you

15   plead guilty and I accept your plea, you will be giving up

16   these rights.  There will be no trial with the possible

17   exception of a sentence, which I will get to momentarily.

18   There is no right to appeal.  I will simply enter a judgment

19   of guilty based upon what you tell me, based upon your pleas

20   of guilty.

21         Do you understand that?

22         THE DEFENDANT:  I do.

23         THE COURT:  Finally, before I can actually accept

24   your plea, I am required to satisfy myself that you are in

25   fact guilty of these charges.  To do that in a few minutes I

1   am going to ask you some questions.  In responding to my

2   questions obviously you will give up your right to remain

3   silent.  You will give up your constitutional right not to

4   incriminate yourself.  You will be called upon here in open

5   Court to acknowledge your guilt.

6          Do you understand that?

7          THE DEFENDANT:  I do.

8          THE COURT:  Are you willing now to give up your

9   right to a trial and these others rights I just explained.

10          THE DEFENDANT:  Yes, I am.

11          THE COURT:  Mr. Blazer, do you have any question

12   about any of the material we covered so far?

13          THE DEFENDANT:  No, I don't.

14          THE COURT:  For the record, I have before me a

15   document that bears the caption of this case.  I guess I have

16   a draft of the original that is in the government's

17   possession.

18          MR. NORRIS:  I gave it to the Courtroom Deputy, Your

19   Honor.  The original Information?

20          THE COURT:  No, the agreement.

21          MR. NORRIS:  I will hand that up, Your Honor.

22          THE COURT:  Has that been fully executed?

23          MR. NORRIS:  It has, Your Honor.

24          THE CLERK:  I will mark it as Court Exhibit 1.

25          (So marked as Court Exhibit 1.)

1           THE COURT:  It is a 19 page typewritten document

2   bearing the caption of this case.

3           THE CLERK:  Judge Dearie, I placed the original in

4   front of Mr. Blazer.

5           THE COURT:  All right.

6           The first question, did you read it?

7           THE DEFENDANT:  Yes, I have.

8           THE COURT:  Did you read it carefully?

9           THE DEFENDANT:  Yes, I did.

10           THE COURT:  Would you agree that this is an

11   important 19 pages in your life right now?

12           THE DEFENDANT:  Extremely so.

13           THE COURT:  Did you read it with that degree of

14   care?

15           THE DEFENDANT:  Yes, I did.

16           THE COURT:  Did you review it with counsel?

17           THE DEFENDANT:  I did.

18           THE COURT:  Have they satisfied you and answered of

19   your questions?

20           THE DEFENDANT:  They have.

21           THE COURT:  Do you have any questions you would like

22   to put to me?

23           THE DEFENDANT:  No, sir.

24           THE COURT:  Do you feel that you understand

25   everything in this document?

U.S.A. v. CHARLES BLAZER                                   20

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  I will not cover every aspect of this

3  agreement.  We will touch on a few things.  Let me ask you

4  this.  Is your agreement with the United States Attorney fully

5  and accurately set out in this Court Exhibit 1?

6          THE DEFENDANT:  Yes, it is.

7          THE COURT:  Are there any other understandings or

8  agreements that induced your plea that are not reflected in

9  this document?

10         THE DEFENDANT:  No, sir.

11         THE COURT:  Can you confirm that, counselor?

12         MR. CORNGOLD:  Yes, Your Honor.

13         MR. NORRIS:  Yes, Your Honor.

14         THE COURT:  We will come back to that momentarily.

15         Now the information is quite lengthy, and with the

16  assistance of counsel I will summarize rather than read

17  verbatim.

18         Is there any objection to that?

19         MS. MULLIGAN:  No, Your Honor.

20         MR. CORNGOLD:  No, Your Honor.

21         THE COURT:  Have you read this Information?

22         THE DEFENDANT:  Yes, I have.

23         THE COURT:  Have you read it carefully?

24         THE DEFENDANT:  Yes, I have.

25         THE COURT:  With the same degree of care that you

Case 1:17-cr-00306-PKC Document 19-2 Filed 08/18/17 Page 22 of 41 PageID #: 7100

1   brought to the Agreement?

2           THE DEFENDANT:  Yes, I did.

3           THE COURT:  You conferred with counsel?

4           THE DEFENDANT:  Yes, I have.

5           THE COURT:  Do you feel that you understand the

6   nature of charges?

7           THE DEFENDANT:  I do.

8           THE COURT:  Counsel responded to all of your

9   questions to your satisfaction?

10          THE DEFENDANT:  Yes, they have.

11          THE COURT:  There are ten charges, if I am not

12  mistaken, ten charges in total --

13          THE DEFENDANT:  That is correct.

14          THE COURT:  Involving these organizations.  I don't

15  know how you pronounce it, FIFA.

16          MR. NORRIS:  FIFA, Your Honor.

17          THE COURT:  FIFA, and its membership or constituent

18  organization.  The charges relate to events involving an

19  exchange of elicit payments for one purpose or another.  They

20  identify FIFA and its attendant or related constituent

21  organization as what we call an enterprise, a RICO enterprise.

22  RICO is an acronym for, and don't overreact to this as I am

23  sure most people do, Racketeering Influenced Corrupt

24  Organization.  I will spare you the historical note.

25          Then it charges a number of things including

1   conspiracy.  Conspiracy, the initial paragraph explains,

2   identifies these various organizations and what they do, their

3   mission to promote the sports throughout the world, their role

4   in the selection of various sites for World Cups and Gold Cups

5   and so forth and so on.  You have read it.  You know about

6   this more this than I do, that is for sure.

7           It alleges a conspiracy to corrupt this enterprise

8   through the anticipated payment of funds pursuant to various

9   criminal schemes.  Reciting just a heading now, 1998 World Cup

10  bribery scheme, referring to page 16.  The Gold Cup bribery

11  and kickback scheme.  It involves a conspiracy to do these

12  things.  A conspiracy to use wire transfers to effect the

13  payment of monies.

14          Tell me what your understanding of what a conspiracy

15  is, what is a conspiracy?

16          THE DEFENDANT:  That it is an activity conducted by

17  a group of people for a specific aim and objective.

18          THE COURT:  A specific what objective?

19          THE DEFENDANT:  Aim or objective.

20          THE COURT:  That is a B-Plus.  It is a specific

21  criminal aim or objective.  Okay?

22          THE DEFENDANT:  That is corrected.

23          THE COURT:  It is an agreement to do something that

24  the law forbids.

25          THE DEFENDANT:  Okay.

U.S.A. v. CHARLES BLAZER                                    23

1          THE COURT:  It is the agreement itself.

2          THE DEFENDANT:  Okay.

3          THE COURT:  You and I were buddies on the street and

4    we agreed to sell marijuana and we meant it.  We were going to

5    go into the marijuana business.  We committed the crime of

6    conspiracy to distribute marijuana, whether we ever

7    distributed a single gram.  It is an agreement itself.

8          Any questions about that?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  It also charges money laundering, tax

11   evasion, violation of certain financial reporting laws as

12   well.

13         Are you familiar with all of this?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Does anybody feel that I have to go into

16   any more specifics given Mr. Blazer's familiarity with the

17   charges?

18         MR. NORRIS:  No, Your Honor.

19         THE COURT:  Now I return to your agreement, Mr.

20   Blazer, to discuss some important information relative to

21   sentencing.  This really comes, if you will, in three

22   chapters.

23         The first being what the Statute provides.  Each

24   offense carries with it a potential penalty.  There are no

25   mandatory minimums here but there are statutory maximums.

1   Each penalty could be on top of the other.  You could be

2   sentenced to consecutive terms, one after another, and so

3   forth and so on.

4          Paragraph one of your agreement sets out the

5   statutory penalties that you face.  For example in Count One,

6   which is the racketeering conspiracy, there is a maximum term

7   of twenty years imprisonment.

8          THE DEFENDANT:  Yes.

9          THE COURT:  This covers both Count One and Count

10  Two, if I am not mistaken.  The statutes also provides for a

11  period of what is called supervised release.  If you are

12  sentenced to a term of imprisonment, the Court is authorized

13  by statute to impose a sentence of supervised release up to

14  three years.  Supervised release is a period of supervision

15  that begins to run the moment that you are released from

16  federal custody.  This only comes into play if you are

17  sentenced to a period of incarceration.

18         The important thing to remember is that if you are

19  to violate the terms or conditions of supervised release at

20  any point during the period of supervision, you could then

21  under the terms of my sentence in this case be returned to

22  prison for up to two years without any credit being given for

23  the time you spent at liberty under the supervision.

24         Do you follow?

25         THE DEFENDANT:  I do.

U.S.A. v. CHARLES BLAZER                                    25

1        THE COURT:  So for Count One there is a maximum of

2   twenty years, a fine of up to $250,000 or twice the gross

3   profits of the enterprise.  I am quoting the language of the

4   statutory provision.  Restitution is mandatory in an amount to

5   be determined by the Court.  The Court will impose a special

6   assessment of $100 on each Count.  You face certain criminal

7   forfeitures as is provided for in your agreement.  That is the

8   subject I will turn to at the conclusion of this proceeding.

9        Count Two carries with it, I believe, the identical

10  penalties.

11       THE DEFENDANT:  All right.

12       THE COURT:  As does Count Three except the fine here

13  is the greater of $500,000 or twice the value of the monetary

14  instruments or funds involved, that being the money laundering

15  conspiracy.  Again restitution is a special assessment and

16  forfeiture.

17       Counts Four through Nine charge tax evasion.  Each

18  carries a maximum term of five years imprisonment.  There is

19  three years supervised release.  There is a maximum fine of

20  $100,000 and the cost of prosecution.  Restitution to the

21  Internal Revenue Service.  There is a special assessment as I

22  have noted.

23       Finally, Count Ten, which is a failure to file FBAR,

24  with a maximum of ten years in prison and three years of

25  supervised release, and a fine of up to $500,000.  I don't

1   know that restitution plays here.  There is a $100 special

2   assessment.  There are other penalties, according to your

3   agreement, a civil money penalty of $487,875.74 as described

4   in Paragraph 3(g) of your agreement.

5            Have I missed something?

6            MR. NORRIS:  No, Your Honor.

7            THE COURT:  Those are the statutory penalties.  I

8   add they could be made to run consecutively.

9            Now we go to Chapter Two.  Chapter Two involves what

10  we call the sentencing guidelines.  The guidelines are

11  designed to inform the Court, to guide the Court I should say,

12  now I can use the term guide literally, where within this

13  rather broad statutory range you would be sentenced.

14           To do that we apply these various guidelines and

15  establish a sentencing range, which I am not obligated to

16  follow but I am obligated to consider.  Because I am obligated

17  to consider it, I am obligated to calculate it as the first

18  step in the sentence an accurate guideline sentencing range.

19           I won't be in a position to do that until I have

20  seen the presentence report.  This is somewhere down the road.

21  That is a document prepared by the Probation Department with

22  your input as well as counsel's, and the United States

23  Attorney, and the relevant investigatory agencies.

24           The report will tell the story of the case and your

25  involvement in it, your role, and so forth.  It will provide a

U.S.A. v. CHARLES BLAZER                                          27

1   personal history, a financial history, a criminal history if

2   any, and it will contain the Probation Department's

3   recommended calculation of the advisory guideline range.

4          You will see that along with counsel before I do.

5   You will be given an opportunity to voice objections,

6   comments, and give suggestions to Probation.  The document

7   will come to me.

8          At that point if the parties are in disagreement

9   with some aspect of the calculation it will be incumbent upon

10  me to resolve those differences and, as I said, apply the

11  guidelines as I understand them.  I will use them as a guide

12  but not a controlling guide in deciding when we get to Chapter

13  3 down in sentencing, what is under all of the circumstances

14  in the case a reasonable sentence.

15         At the end of the day if you think that I have

16  imposed an unreasonable sentence -- there is no appellate

17  waiver?

18         MR. NORRIS:  No, Your Honor.

19         THE COURT:  If you think I have imposed an

20  unreasonable sentence, you may appeal my sentence to the

21  higher court.  If you are not at that time able to afford the

22  fees and counsel, counsel will be furnished at the expense of

23  the Court.  The United States Attorney you should understand,

24  Mr. Blazer, has a comparable right of appeal should they feel

25  that I have been unreasonably lenient.  They may seek

1   appellate review of the sentence.  Should that happen your

2   interest in that proceeding will simply be represented by

3   counsel of your choosing or counsel provided by the Court.

4           Bear with me just a second.  We have covered a lot

5   of ground, Mr. Blazer.

6           THE DEFENDANT:  Indeed.

7           THE COURT:  I trust you have heard this information

8   before.

9           THE DEFENDANT:  From my attorneys, yes, sir.

10           THE COURT:  Are there any questions that you would

11   like to put to me?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  Counsel, is there anything that I left

14   out that I should include?

15           MR. NORRIS:  No, Your Honor.

16           MR. CORNGOLD:  No, Your Honor.

17           THE COURT:  Are there any questions before I take

18   your plea?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Are you ready to plead?

21           THE DEFENDANT:  I am.

22           THE COURT:  What is your plea to Count One through

23   10 inclusive, guilty or not guilty?

24           THE DEFENDANT:  Guilty.

25           THE COURT:  Are you pleading guilty voluntarily?

1        THE DEFENDANT:  Yes, I am.

2        THE COURT:  Of your own free will?

3        THE DEFENDANT:  Totally.

4        THE COURT:  Has anybody forced you to plead guilty?

5        THE DEFENDANT:  No.

6        THE COURT:  Has anybody made a promise to you that

7   is not reflected in this agreement?

8        THE DEFENDANT:  No.

9        THE COURT:  Has anybody given you any assurance as

10  to what I will do when it comes to sentence?

11        THE DEFENDANT:  No.

12        THE COURT:  We turn to the charges.  Has an

13  allocution been prepared?

14        MR. CORNGOLD:  Yes, Your Honor.

15        THE COURT:  Why don't we start with that and then we

16  will go from there.

17        MR. CORNGOLD:  We have done it count by count.

18        THE COURT:  Even better.

19        Mr. Blazer, tell me what you did.

20        THE DEFENDANT:  Regarding Count One.

21        From in and about and between 1990 to December 2011,

22  I was employed by and associated with the Federation

23  Internationale de Football Association, commonly known as

24  FIFA, and one of its constituent confederations, the

25  Confederation of North, Central American and Caribbean

1   Association Football, commonly known as CONCACAF, and their

2   sports marketing affiliates.

3   During this time, the principal purpose of FIFA and

4   CONCACAF, as well as other affiliated soccer governing bodies

5   and sports marketing companies, was to promote and/or regulate

6   the sport of soccer worldwide as part of an ongoing

7   organization.  Among other things, FIFA and CONCACAF held

8   sports-related events and conducted business overseas and in

9   the United States, including in the Eastern District of New

10  York, and utilized American financial institutions in their

11  banking and investment activities.  CONCACAF also had its

12  headquarters in New York.

13  From 1997 through 2013, I served as a FIFA executive

14  committee member.  One of my responsibilities in that role was

15  participating in the selection of the host countries for the

16  World Cup.  I also served as General Secretary of CONCACAF

17  from 1990 through December of 2011, and was responsible for,

18  among other things, participating in the negotiations for

19  sponsorship and media rights.

20  During my association with FIFA and CONCACAF, among

21  other things, I and others agreed that I or a co-conspirator

22  would commit at least two acts of racketeering activity.

23  Among other things, I agreed with other persons in or around

24  1992 to facilitate the acceptance of a bribe in conjunction

25  with the selection of the host nation for the 1998 World Cup.

U.S.A. v. CHARLES BLAZER                                          31

1   Beginning in or about 1993 and continuing through the early
2   2000s, I and others agreed to accept bribes and kickbacks in
3   conjunction with the broadcast and other rights to the 1996,
4   1998, 2000, 2002, and 2003 Gold Cups.  Beginning in or around
5   2004 and continuing through 2011, I and others on the FIFA
6   executive committee agreed to accept bribes in conjunction
7   with the selection of South Africa as the host nation for the
8   2010 World Cup.  Among other things, my actions described
9   above had common participants and results.
10          That is with regard to Count One.
11          THE COURT:  All right.
12          Go ahead.
13          THE DEFENDANT:  Count Two.
14          Between April of 2004 and May 2011, I and others who
15   were fiduciaries to both FIFA and CONCACAF, in contravention
16   of our duties, I and others, while acting in our official
17   capacities, agreed to participate in a scheme to defraud FIFA
18   and CONCACAF of the right to honest services by taking
19   undisclosed bribes.  I and others agreed to use e-mail,
20   telephone, and a wire transfer into and out of the United
21   States in furtherance of the scheme.  Funds procured through
22   these improper payments passed through JFK Airport in the form
23   of a check.
24          That is regarding Count Two.
25          Number three.

Case 1:17-cv-02302-FK-SMG Document 11-2 Filed 04/18/17 Page 33 of 41 PageID #:8111

1        THE COURT:  Okay.

2        THE DEFENDANT:  Number three.

3        Between December 2008 and May 2011, I and others

4   agreed to and transmitted funds by wire transfer and checks

5   from places within the United States to places in the

6   Caribbean, and from places in the Caribbean to places in the

7   United States.  I agreed to and took these actions to, among

8   other things, promote and conceal my receipt of bribes and

9   kickbacks.  I knew that the funds involved were the proceeds

10  of an unlawful bribe, and I and others used wires, e-mails,

11  and telephone to effectuate payment of and conceal the nature

12  of the bribe.  Funds procured through these improper payments

13  passed through JFK Airport in the form of a check.

14        Regarding Counts Four through Nine.

15        Between 2005 and 2010, while a resident of New York,

16  New York, I knowingly and wilfully failed to file an income

17  tax return and failed to pay income taxes.  In this way, I

18  intentionally concealed my true income from the IRS, thereby

19  defrauding the IRS of income tax owed.  I knew that my actions

20  were wrong at the time.

21        THE COURT:  Repeat that again.

22        THE DEFENDANT:  Between 2005 and 2010, while a

23  resident of New York, New York, I knowingly and willfully

24  failed to file an income tax return and failed to pay income

25  taxes.  In this way, I intentionally concealed my true income

1  from the IRS, thereby defrauding the IRS of income tax owed.

2  I knew that my actions were wrong at the time.

3          MR. CORNGOLD:  Mr. Blazer is waiving venue for

4  these.

5          THE COURT:  Do you know what venue is, Mr. Blazer?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Continue.

8          THE DEFENDANT:  Count 10.

9          In 2010, while a resident of New York, I had an

10  interest in and controlled bank accounts in the Bahamas with a

11  total value exceeds $10,000.  I intentionally and willfully

12  did not file a report disclosing those accounts to the

13  Department of the Treasury.  I did this while violating the

14  Federal Tax Law.

15          THE COURT:  All right.

16          You have seen it before?

17          MR. NORRIS:  Yes, Your Honor.

18          THE COURT:  Is there anything that you want to add?

19          MR. NORRIS:  Two quick points.

20          With respect to Count Three.  I would just note that

21  the places in the Caribbean that the defendant referred to are

22  outside of the United States.

23          With respect to Counts Four through Nine, the

24  defendant owes substantial federal income tax for each of the

25  years 2005 to 2010.  I believe we could prove that if this

1  case were to go to trial.

2          THE COURT:  Anything else, Mr. Corngold?

3          MR. CORNGOLD:  No, Your Honor.

4          THE COURT:  May I have a copy of that, if you have

5  no objection.

6          MR. CORNGOLD:  We have no objection.

7          THE COURT:  I don't need it right this minute but if

8  you can get me a clean copy of it I would appreciate it.

9          MR. NORRIS:  One other point, as well, with respect

10  to Count Ten and Venue, I would note that there are local IRS

11  offices within the Eastern District of New York that the

12  defendant could have filed the FBAR form which gets the venue

13  to that count.

14          THE COURT:  Based on the information given to me I

15  find that the defendant is acting voluntarily, that he fully

16  understands his rights, the consequences and possible

17  consequences of his pleas, and there are a factual basis for

18  these pleas of guilty.  I, therefore, accept the plea of

19  guilty to Counts One through Ten inclusive of the information

20  bearing Docket number 13-CR-602.

21          Mr. Blazer, at the appropriate time I urge you to

22  cooperate with the Probation Department in their preparation

23  of the presentence report consistent, of course, with the

24  advice of counsel.

25          Let's take up the subject of forfeiture.  You will

1   recall in your agreement there are strict understandings,

2   undertaking, and agreements relative to forfeiture of certain

3   sums.

4           I have before me an order of forfeiture which I take

5   it, Mr. Corngold, you have seen?

6           MR. CORNGOLD:  Yes, Your Honor.

7           THE COURT:  Is there any objection if I sign that?

8           MR. CORNGOLD:  No, Your Honor.

9           MR. NORRIS:  Your Honor, if I could, could I provide

10  up to the court two identical copies, as well?

11          THE COURT:  More triplicate?

12          MR. NORRIS:  More triplicate, Your Honor.

13          THE COURT:  All right, I signed the order of

14  forfeiture.

15          Is there anything else?

16

17

18

19

20

21

22

23

24

25          THE COURT:  We will set a date for late next year as

1

2

3

4

5

6

7

8

9

10          THE COURT:   Mr. Blazer, my last question is do you

11   have any questions?

12          THE DEFENDANT:   Nothing.

13          THE COURT:   Are you sure?

14          THE DEFENDANT:   One moment, Your Honor.

15          MR. NORRIS:   Your Honor, can we just have one moment

16   to confer?

17          THE COURT:   Take your time.

18          (Whereupon counsel confer.)

19          MR. NORRIS:   Two final matters.

20          With respect to bail.

21          THE COURT:   The gentleman has not be processed?

22          MR. NORRIS:   He is going to be processed by the

23   Marshals after we leave this proceeding.

24          The parties jointly recommend a $10,000,000

25   unsecured bond.

```
14          THE COURT:  I have no objection to that.  I have one

15   thought that just occurred to me.  As we concluded, Mr.

16   Blazer, I asked you if you had any final questions.  You

17   seemed to indicate that you might.

18          THE DEFENDANT:  It was pertaining to this document.

19          THE COURT:  Are you satisfied now?

20          THE DEFENDANT:  Yes, I am.

21          THE COURT:  Well, fair enough.  Good luck with your

22   health --

23          MR. CORNGOLD:  Your Honor, I have one thing for the

24   record.

25          We looked at the Pretrial Services report and there
```

1   are certain bank accounts that are not mentioned in there.  I

2   think in the interview they didn't cover it.  The government

3   is well aware, I think, of the accounts.  I don't think that

4   it should change anything with respect to the bail conditions.

5            THE COURT:  All right.

6            MR. NORRIS:  Your Honor, if we could, if you could

7   ask the defendant to confirm that there are additional

8   accounts not listed on that Pretrial Services report.  It

9   appears that Pretrial Services didn't inquire about foreign

10  bank accounts.

11           THE CLERK:  Gentlemen, just one second please.

12           THE COURT:

13

14

15  If there are any variations, any change in circumstances, any

16  relaxation of travel authorizations and etcetera, I want

17  Pretrial Services informed.  Okay.

18           Yes, sir?

19           THE DEFENDANT:  The answer was yes to the last

20  question.  I didn't get a chance to look at the document, I

21  have, and I just want to record that my answer was yes.

22           THE COURT:  Yes, you have additional bank accounts

23  that are listed.

24           THE DEFENDANT:  That were not listed on that

25  document, correct.

1    MR. NORRIS:  Just so the record is clear my

2  understanding is that, and counsel and the defendant can

3  confirm this, it wasn't that they were not disclosed to

4  Pretrial Services, it is that they didn't ask about foreign

5  assets.  So in reviewing that we wanted to make sure that the

6  record is clear.

7    THE COURT:  There was no attempt to deceive, is that

8  what you are getting at?

9    MR. NORRIS:  Yes, foreign assets and a trading

10  account in the United States.  Again, the IRS and the FBI and

11  the government are aware of this.

12    THE COURT:  Now, is there anything else?

13    MR. CORNGOLD:  No, Your Honor.

14    MR. NORRIS:  No, Your Honor.  Thank you very much.

15    THE CLERK:  Mr. Blazer, I need your signature on

16  this form.  I need your signature right here.

17    THE COURT:  Elie, here is the file.

18    THE CLERK:  Judge Dearie, I need your signature

19  right here.

20    THE COURT:  Yes.

21    THE CLERK:  Just for the record, I have a sentence

22  control date of November 7th, 2014 at 10 a.m.

23    THE DEFENDANT:  I want to hand this back to you.

24    THE CLERK:  This actually, Mr. Norris, I will ask

25  you to hold this in your file.

1        MR. NORRIS:  Yes.

2        THE CLERK:  I will give you a copy of the waiver and

3    everything here will be under seal.

4        MR. NORRIS:  Thank you very much for your help.

5        THE CLERK:  Ms. Perez, I want to give you a copy of

6    this bond for your file.

7        Who is dealing with the Marshals right now, the case

8    agent?  I will give you this bond, the original, to give it to

9    the Marshals.  Let me make this perfectly clear.  It is

10   absolutely important that you give this to the Marshals.

11       MR. NORRIS:  Thank you.

12       (Whereupon Judge Dearie leaves the courtroom.)

13       (Matter concluded at 11 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25