**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE CONFEDERATION OF NORTH, CENTRAL AMERICAN AND CARIBBEAN ASSOCIATION FOOTBALL,<br><br>         Plaintiff,<br><br>    - against -<br><br>AUSTIN JACK WARNER, CHARLES BLAZER, SPORTVERTISING (NY), SPORTVERTISING (CAYMAN), EN PASSANT LTD., EN PASSANT INC., MULTISPORT GAMES DEVELOPMENT INC.,<br><br>         Defendants. | **DECLARATION IN SUPPORT OF REQUEST FOR CERTIFICATE OF DEFAULT**<br>No. 1:17-CV-02304 (WFK) (SMG) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

   JOHN J. KUSTER, an attorney, admitted to practice in the United States District Court of the Eastern District of New York affirms, under penalty of perjury, that the following facts are true:

   1. I am counsel of record for Plaintiff, the Confederation of North, Central American, and Caribbean Association Football ("CONCACAF" or "Plaintiff") in the above-captioned action and am fully familiar with all of the facts herein.

   2. Jack Warner's residence is located at 69 Cynthia Drive, Howel Settlement, Five Rivers, Arouca, Trinidad and Tobago. Upon information and belief, Mr. Warner is not, and never has been, a citizen of the United States.

   3. On April 18, 2017, Plaintiff filed this action to recover the substantial damages incurred as a result of Defendant Jack Warner's criminal and tortious misconduct.

4. On May 19, 2017, this Court executed a Letter Rogatory pursuant to Plaintiff's request, assisting Plaintiff with effecting foreign service upon Defendant Warner pursuant to Fed. R. Civ. P 4(f)(2)(B). (Dkt. No. 8; Exhibit 1).

5. Thereafter, on May 22, 2017, Plaintiff sent its Summons, Complaint, 7.1 Disclosure, and the executed Letter Rogatory to the Registrar of the Supreme Court of Trinidad and Tobago, Port of Spain in accordance with Part 76.2 of Trinidad's Civil Proceedings Rules 1998 (as amended) (the "CPR").

6. Plaintiff received correspondence from the Assistant Registrar of the Supreme Court of Trinidad and Tobago on June 16, 2017, declining to effect service on Jack Warner and instructing that a Letter Rogatory from a United States District Court Judge did not comply with Part 76 of the CPR and instructing that the request must be made through a Minister or Consulate.

7. After Plaintiff's local counsel's ongoing correspondence with the Assistant Registrar, Plaintiff sent a letter to the Assistant Registrar requesting reconsideration of its compliance with Part 76 on August 7, 2017. On August 9, 2017, the Assistant Registrar again declined to effect service.

8. On August 21, 2017, Plaintiff sent a letter to the Honourable Minister of Foreign and CARICOM Affairs (the "Minister"), seeking a recommendation to the High Court of Trinidad and Tobago that service be effected on Jack Warner. Plaintiff did not receive a response to this request.

9. On October 10, 2017, Plaintiff sent a second letter to the Minister, seeking a recommendation to the High Court of Trinidad and Tobago that service be effected on Jack Warner. Plaintiff did not receive a response to this request.

10. Thereafter, Plaintiff's local counsel in Trinidad continued following up periodically with the Minister regarding its request for service on Jack Warner. The Minister's office never responded that it had effectuated service, so local counsel continued to contact the Minister.

11. On March 13, 2019, the Assistant Registrar from the of the Supreme Court of Trinidad and Tobago informed local counsel via email that service was effected on Jack Warner on October 4, 2017 (the "March 13, 2019 Email"). (A true and correct excerpt of that email is attached hereto as Exhibit 2). Prior to this communication, it had been Plaintiff's understanding that service upon Jack Warner had not yet been effected.

12. According to the process server's affidavit of service, Plaintiff's pleadings were served on Jack Warner at Knox Street, Port of Spain in Trinidad and Tobago on October 4, 2017. (Exhibit 3). The Acting Registrar certified that this personal service was made in accordance with Part 76 of the CPR. (Exhibit 4).

13. Pursuant to Fed. R. Civ. P. 12, Defendant Jack Warner's time to answer or otherwise move with respect to the complaint expired on October 25, 2017.

14. Defendant Jack Warner has not answered or otherwise moved with respect to the complaint, and the time for him to answer or otherwise move has not been extended.

15. Defendant Jack Warner was not an infant or an incompetent person. Defendant Jack Warner was not and is not in the military service of the United States as it appears from the facts in this litigation.

16. Defendant Jack Warner is liable for resultant injuries and damages incurred by Plaintiff, which were directly caused by Defendant Jack Warner as a result of his violations of

civil RICO, fraudulent actions, and Warner's breach of his fiduciary duties, in an amount not less than $20,000,000.

17. As alleged in CONCACAF's Complaint, and further supported by the information, guilty plea and allocution of Jack Warner's co-defendant Charles Blazer ("Chuck Blazer") (*see* Dkt. Nos. 1-1; 1-2), since 1990, Jack Warner and Chuck Blazer served as CONCACAF's President and General Secretary, respectively. Together, Jack Warner and Chuck Blazer employed various consulting agreements, offshore bank accounts and shell companies, to facilitate the payment of large financial sums in a concealed manner in order to misappropriate and embezzle money from Plaintiff.

18. Jack Warner is currently the subject of extradition proceedings in Trinidad with respect to criminal charges against him in the United States for racketeering, wire fraud, money laundering and other crimes, including bribery, in connection with widespread and pervasive criminal activities that victimized Plaintiff. *US v. Webb, et al.*, No. 15 Cr. 252 (S-1) (PKC) (Superseding Indictment, ¶¶ 159-165; 216-230; 292-303). This included Jack Warner's receipt of hundreds of thousands of dollars in bribes for granting an exclusive sports marketing broadcast agreement for CONCACAF's Gold Cup tournament to a sports marketing company, which pled guilty in the same criminal action to making bribes and kickback payments to soccer officials for the 1996, 1998, 2000 Gold Cup tournaments. For the 2002 and 2003 Gold Cups, Jack Warner similarly accepted hundreds of thousands of dollars in bribe payments from the same sports marketing company in connection with similar broadcast and marketing rights. Nearly $1 million dollars in identified payments were routed through shell companies controlled by Chuck Blazer and subsequently shared with Jack Warner.

19. Jack Warner also agreed to accept a $10 million bribe in exchange for casting his ballot in favor of a particular country to host the 2010 FIFA World Cup. Jack Warner arranged for the $10 million payment to be sent to an account he controlled in the name of the Caribbean Football Union ("CFU") and CONCACAF.

20. Jack Warner, in exchange for Chuck Blazer's support during his presidential campaign, caused CONCACAF to enter into an agreement with Sportvertising, one of Blazer's shell entities. CONCACAF's agreement with Sportvertising enabled Chuck Blazer to pay himself steadily increasing sums in the form of undisclosed fees and commissions for over a decade.

21. Jack Warner also embezzled millions of dollars from CONCACAF and misappropriated CONCACAF's commercial property.

22. Plaintiff has been compelled to spend millions of dollars on reforming CONCACAF's governance and operations, as well as for myriad professionals, consultants and attorneys required to address the impact of the crimes and other wrongdoing engaged in by Jack Warner.

23. Jack Warner and Charles Blazer, while in their governance positions at CONCACAF, actively concealed their fraudulent behavior and misappropriation from CONCACAF in breach of their fiduciary duties depriving CONCACAF of its rights to honest services.

WHEREFORE, Plaintiff, the Confederation of North, Central American, and Caribbean Association Football requests that the default of Defendant Austin Jack Warner be noted and a certificate of default issued.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief, that the amount claimed is justly due to plaintiff, and that no part thereof has been paid.

Dated:  New York, New York
April 4, 2019

By:   /s/ John J. Kuster