**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE CONFEDERATION OF NORTH, CENTRAL :
AMERICAN AND CARIBBEAN ASSOCIATION :
FOOTBALL,                          :     No. 1:17-CV-02304 (WFK) (SMG)
                                   :
                  Plaintiff,       :
                                   :
             - against -           :
                                   :
                                   :
AUSTIN JACK WARNER, THE ESTATE OF  :
CHARLES BLAZER, ELIZABETH MANZO,   :
ESQ., Administrator CTA, substituted as parties on :
behalf of CHARLES BLAZER,          :
SPORTVERTISING (NY), SPORTVERTISING :
(CAYMAN), EN PASSANT LTD., EN      :
PASSANT INC., MULTISPORT GAMES     :
DEVELOPMENT INC.,                  :
                                   :
                  Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# CONCACAF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
## DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE 55(b)

# TABLE OF CONTENTS

**Page**

I.   THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT AGAINST JACK WARNER ........................................................................7

    A.   CONCACAF Properly Served Warner ....................................................8

    B.   CONCACAF is Entitled to a Default Judgment Against Warner..........................9

        i    Warner's Default was Willful....................................................10

        ii   Warner has no Meritorious Defense ........................................12

        iii  Plaintiff will be Prejudiced if a Default is not Granted ...........................14

II.  WARNER IS LIABLE TO CONCACAF FOR DAMAGES RESULTING FROM
HIS WRONGFUL CONDUCT ........................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Aminov*,
   No. 11-CV-2391, 2014 WL 527834 (E.D.N.Y. Feb. 7, 2014) .................................................16

*Allstate Ins. Co. v. Howell*,
   No. 09-CV-4660, 2013 WL 5447152 (E.D.N.Y. Sept. 30, 2013) ..........................................16

*Artmatic USA Cosmetics, a Div. of Arthur Matney Co. v. Maybelline Co., a Div.
   of Schering Plough*,
   906 F. Supp. 850 (E.D.N.Y. 1995) .......................................................................................11

*Azikiwe v. Nigerian Airways Ltd.*,
   No. 03-CV-6387, 2005 WL 8160005 (E.D.N.Y. Aug. 24, 2005), *report and
   recommendation adopted as modified*, No. 03-CV-6837, 2005 WL 8160004
   (E.D.N.Y. Sept. 12, 2005)......................................................................................................8

*Boster v. Braccia*,
   No. 06-CV-4756, 2007 WL 708835 (E.D.N.Y. Mar. 6, 2007)..............................................11

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*,
   No. 06-CV-14226, 2008 WL 5560868 (S.D.N.Y. Oct. 27, 2008)..........................................14

*Caytas v. Maruszak*,
   No. 06-CV-985, 2009 WL 249377 (S.D.N.Y. Jan. 30, 2009) ...............................................12

*Chem. Waste Mgmt., Inc. v. Hernandez*,
   No. 95-CV-9650, 1997 WL 47811 (S.D.N.Y. Feb. 5, 1997)...................................................9

*Chen v. Jenna Lane, Inc.*,
   30 F.Supp.2d 622 (S.D.N.Y. 1998) .....................................................................................12

*D'Orange v. Feely*,
   1996 WL 446254 (2d Cir. 1996)..........................................................................................10

*Finkel v. Romanowicz*,
   577 F.3d 79 (2d Cir. 2009) ..................................................................................................13

*Flaks v. Koegel*,
   504 F.2d 702 (2d Cir. 1974) ................................................................................................15

*Gov't Emp. Ins. Co. v. Infinity Health Prod., Ltd.*,
   No. 10-CV-5611, 2012 WL 1427796 (E.D.N.Y. Apr. 6, 2012), *report and
   recommendation adopted*, No. 10-CV-5611, 2012 WL 1432213 (E.D.N.Y.
   Apr. 25, 2012) ...........................................................................................................15

*Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992) ......................................................................................10

*Gutman v. Klein*,
   No. 03-CV-1570, 2010 WL 4975593 (E.D.N.Y. Aug. 19, 2010) ............................14

*Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*,
   No. 17-CV-5721, 2019 WL 312149 (E.D.N.Y. Jan. 3, 2019) ..................................12

*La Barbera v. Les Sub–Surface Plumbing, Inc.*,
   No. 06-CV-3343, 2008 WL 906695 (E.D.N.Y. Apr. 3, 2008) ..................................15

*Mahoney v. Amekk Corp.*,
   No. 14-CV-4131, 2016 WL 6585810 (E.D.N.Y. Sept. 30, 2016) ............................10

*Marziliano v. Heckler*,
   728 F.2d 151 (2nd Cir. 1984) ....................................................................................11

*Mason Tenders Dist. Council v. Duce Constr. Corp.*,
   No. 02-CV-9044, 2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003) ............................10

*Millennium TGA, Inc. v, Leon*,
   No. 12-CV-01360, 2013 WL 5719079 (E.D.N.Y. Oct. 18, 2013)............................10

*Sayles v. Pac. Engineers & Constructors, Ltd.*,
   No. 08-CV-676S, 2009 WL 791332 (W.D.N.Y. Mar. 23, 2009) ...............................9

*Sola Franchise Corp. v. Solo Salon Studios Inc.*,
   No. 14-CV-0946, 2015 WL 1299259 (E.D.N.Y. Mar. 23, 2015)..............................14

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
   109 F.3d 105 (2d Cir. 1997) ......................................................................................15

*U.S. v. Chesir*,
   862 F. Supp. 2d 286 (E.D.N.Y. 2012), *aff'd*, 526 F. App'x 60 (2d Cir. 2013).......10

*U.S. v. Myers*,
   236 F. Supp. 3d 702 (E.D.N.Y. 2017) ...................................................10, 12, 15

*United States v. Brooks*,
   872 F.3d 78 (2d Cir. 2017).........................................................................................13

**Statutes**

18 U.S.C. § 1343 ....................................................................................................................4

18 U.S.C. § 1952 ....................................................................................................................4

18 U.S.C. § 1956 ....................................................................................................................4

18 U.S.C. § 1957 ....................................................................................................................4

18 U.S.C. § 1962(c) ...........................................................................................................1, 4

18 U.S.C. § 1964(c) .......................................................................................................15, 16

**Other Authorities**

*CONCACAF Sues Chuck Blazer and Jack Warner*, Caribbean News Weekly (Apr.
    24, 2017), https://www.caribbeannationalweekly.com/sports/concacaf-sues-
    chuck-blazer-jack-warner/ ..........................................................................................11

FRCP 4 ..................................................................................................................... *passim*

FRCP 12 .................................................................................................................2, 9, 11

FRCP 55 ................................................................................................................... *passim*

Trinidad's Civil Proceedings Rules (1998)
    Part 76 ..................................................................................................................1, 6, 7, 9

Liam Daniel Pierce, *CONCACAF Sues Ex-Officials Jack Warner and Chuck
    Blazer for Embezzlement*; Vice Sports (Apr. 24, 2017),
    https://sports.vice.com/en_ca/article/nzxxpz/concacaf-sues-ex-officials-jack-
    warner-and-chuck-blazer-for-embezzlement .............................................................11

Mary Papenfuss, *Ex-Soccer Officials Hit with $20 Million Lawsuit Over Massive
    Bribery Scheme*, Huffington Post (Apr. 24, 2017),
    https://www.huffingtonpost.com/entry/chuck-blazer-concacaf-soccer-
    lawsuit_us_58fd397ae4b06b9cb917c27e ................................................................11

Matthew Guarnaccia, *Soccer Federation Sues Ex-Officials for Bribes and
    Kickbacks* (Apr. 20, 2017), https://www.law360.com/articles/915267/soccer-
    federation-sues-ex-officials-for-bribes-kickbacks ...................................................11

## INTRODUCTION

On April 18, 2017, the Confederation of North, Central American, and Caribbean Association Football ("CONCACAF" or "Plaintiff"), filed this action against Jack Warner ("Warner"), Charles "Chuck" Blazer ("Blazer"), the former President and General Secretary of CONCACAF, respectively, as well as several shell entities used by Blazer to effectuate defendants' schemes, including but not limited to Sportvertising (NY), Sportvertising (Cayman), En Passant Ltd., En Passant Inc., and Multisport Games Development Inc. (the "Blazer Entities," together with Blazer, the "Blazer Defendants,") (collectively, the "Defendants").  In its Complaint (the "Complaint" or "Compl."), Plaintiff alleges, among other things, that Defendants violated 18 U.S.C. § 1962(c) (civil RICO), committed fraud against CONCACAF, and breached their fiduciary duties to CONCACAF, causing CONCACAF to sustain substantial damages.  (*See* Dkt. No. 1; Ex. 1). [1]

On April 1, 2019, Plaintiff filed with this Court a Mutual Settlement Agreement and Release and its accepted Offer of Judgment from the Estate of Charles Blazer, Elizabeth Manzo, Esq., Administrator CTA (together, the "Blazer Estate"), substituted in the action in the place of the Blazer Defendants.  (Dkt. Nos. 38, 41).  On April 5, 2019, the Court entered a judgment of $20,000,000 in favor of Plaintiff against the Blazer Estate.  (Dkt. No. 42).

The only remaining defendant in this action is Warner, who has failed to appear or otherwise defend this action.  As described in further detail herein, on October 4, 2017, Plaintiff effected foreign service on Warner in accordance with Federal Rule of Civil Procedure ("FRCP") 4(f) and Part 76 of Trinidad's Civil Proceedings Rules (1998) (the "CPR").  Consequently, Warner

---

[1] Unless otherwise noted, exhibits cited herein are appended to the Declaration of John J. Kuster in Support of CONCACAF's Memorandum of Law in Support of its Motion for Default Judgment Pursuant to Federal Rule 55(b) (the "Kuster Decl.").

was required to file an answer by October 25, 2017, within 21 days of service, as provided by FRCP 12(a)(1)(A)(i).  Warner has failed to answer or otherwise move in this action.  After learning from the High Court of Trinidad on March 13, 2019 that service was effected on Warner, on April 4, 2019, CONCACAF requested a Certificate of Default from this Court.  (Dkt. No. 40).  On April 11, 2019, the Clerk of the United States District Court for the Eastern District of New York issued a Certificate of Default as to Warner.  (Dkt. No. 43; Ex. 2).

CONCACAF now moves pursuant to FRCP 55, seeking an order granting its Motion for Default Judgment against Jack Warner for failure to answer or otherwise defend the present suit during the time prescribed in FRCP 12(a)(1)(A)(i), after receiving proper service of process.  In support of its motion, Plaintiff submits this Memorandum of Law, along with the Declaration of John Kuster dated June 4, 2019 and the exhibits annexed thereto.  CONCACAF respectfully requests that this Court grant its Rule 55 Motion for Default Judgment and enter a judgment against Warner, and respectfully requests an inquest for damages by affidavit to be determined before this Court.

## STATEMENT OF FACTS

As alleged in detail in Plaintiff's Complaint, Warner and Blazer served as CONCACAF's President and General Secretary, respectively, for over two decades beginning in 1990.  During their tenure, both Blazer and Warner used CONCACAF and its commercial properties (including CONCACAF's premier tournament known as the Gold Cup) as vehicles to extract bribes and kickbacks for their own enrichment.  Specifically, Warner used his position of power and influence at CONCACAF to arrange lucrative bribe payments and then funnel these funds, with the assistance of Blazer, through Blazer's shell companies, the Blazer Entities, solely controlled and owned by Blazer, to obfuscate the legitimacy of the transactions.  Moreover, Warner and Blazer

retained complete control over CONCACAF's financial records preventing others at CONCACAF from identifying the true nature of their criminal enterprise and fraudulent transactions. Warner and Blazer also peddled their influence among other high-ranking football officials for their personal gain in violation of their fiduciary duties owed to CONCACAF.

Both Warner and Blazer were charged with criminal racketeering, wire fraud, money laundering and other crimes in connection with these and other widespread and pervasive criminal activities that victimized CONCACAF in a series of criminal proceedings filed by the United States Department of Justice (the "DOJ") in this Court, including the Indictment unsealed by the DOJ on May 27, 2015 in the matter captioned *United States of America v. Webb et al*., Cr. No. 15-252, as well as the Superseding Indictment captioned *United States of America v. Hawit, et al.*, Cr. No. 15-252 in that same matter, unsealed on December 3, 2015, in addition to the Information (the "Information") filed by the DOJ in the matter captioned *United States of America v. Charles Gordon Blaze*r, No. 13-CR-602 on November 25, 2013, unsealed on June 15, 2015. The Superseding Indictment outlines Warner's criminal misconduct while serving as CONCACAF's President, including criminal racketeering, wire fraud and money laundering.[2]  (Ex. 3 ¶¶ 362-364, 387-392, 471, 473).[3]

---

[2] The Superseding Indictment was not unsealed until December 3, 2015, and many of the acts therein were previously not known to CONCACAF.  (*See* Ex. 1 at 14, ¶ 37; *id.* at 4).

[3] Jack Warner is currently the subject of extradition proceedings in Trinidad with respect to the criminal charges against him in the United States for racketeering, wire fraud, money laundering and other crimes, including bribery, in connection with the widespread and pervasive criminal activities that victimized Plaintiff.  Separately, CONCACAF filed a civil action against Warner, his wife, their accountant and a number of Warner's shell companies with respect to separate and distinct acts of breaches of fiduciary duty, fraud, embezzlement and other misconduct, including Warner's wrongful transfer of a large soccer field, stadium and hotel complex known as the "CONCACAF Centre of Excellence" in the High Court of Trinidad and Tobago in Port of Spain (the "Trinidad Lawsuit").  None of the causes of action in the Trinidad Lawsuit are at issue here. *See The Confederation of North, Central America, and Caribbean Association v. Warner, et al.*, No. CV 2016-01742 (Trin. & Tobago Sup. Ct. Mar. 20, 2016).

As set forth in the Complaint, Warner, Blazer and others utilized CONCACAF, FIFA and other football (soccer) organizations as criminal enterprises.  More specifically, Warner and Blazer caused CONCACAF to enter media rights agreements with a Sports Marketing Company for its premier tournament known as the Gold Cup, from 1993 through at least 2003 in exchange for kickbacks and bribe payments made to Warner and Blazer.  Blazer funneled many of those payments through one or more of the Blazer Entities.  (*See* Ex. 1 ¶¶ 43-46).  Blazer and Warner also accepted a $10 million bribe in exchange for their votes – to be cast as representatives of CONCACAF – for the 2010 FIFA World Cup.  (*Id.* ¶¶ 47-56).

On November 25, 2013, Blazer pled guilty to criminal charges alleged in the Information, including to 18 U.S.C. § 1962(c) for engaging in patterns of racketeering activity which included multiple acts of wire fraud (18 U.S.C. § 1343); money laundering and money laundering conspiracy (18 U.S.C. §§ 1956, 1957), and interstate and foreign travel in-aid-of racketeering (18 U.S.C. § 1952).  (Ex. 5).  Blazer admitted that he and others committed "at least two acts of racketeering activity," including agreeing to "accept bribes and kickbacks in conjunction with the broadcast and other rights to the 1996, 1998, 2000, 2002 and 2003 Gold Cups."  (Ex. 5).  Copies of the Information and the transcript of Blazer's guilty plea and allocution were appended to CONCACAF's Complaint.  (Ex. 1; s*ee also* Ex. 5).  As alleged in the Complaint, Warner also committed these wrongful acts and participated as a co-conspirator with Blazer. (Ex. 1 ¶¶ 32; 40-46; 90; 97).  Warner engaged in a pattern of racketeering, which included wire fraud, money laundering and money laundering conspiracy.  Warner similarly agreed to accept bribes and kickbacks in connection with broadcast and other rights to the Gold Cup.

In conjunction with all of these activities, and as detailed in the Complaint, Warner also engaged in numerous acts of fraud and breaches of fiduciary duties.  Specifically, Warner deprived

CONCACAF of its right to honest services by abdicating his role as CONCACAF's President and knowingly permitting Blazer to compensate himself without authorization and without informing CONCACAF's Executive Committee, by acting in his own self-interest and for his own pecuniary gain when accepting bribes and kickbacks in connection with the sale of CONCACAF's commercial and media rights, and by failing to act in the best interests of CONCACAF and engaging in self-dealing by accepting bribes in exchange for his World Cup vote as a FIFA Executive Committee member.

For example, Warner caused CONCACAF to enter into an agreement with Blazer and one of the Blazer Entities, Sportvertising (NY), in exchange for Blazer's support during Warner's presidential campaign for the CONCACAF presidency. This arrangement allowed Warner to secure the position of President and allowed Blazer to compensate himself in the form of commissions without the authorization of CONCACAF's Executive Committee. (Ex. 1 ¶ 58). From 1996 through 2011, Blazer caused CONCACAF to pay En Passant Inc. and En Passant Ltd nearly $2.5 million in commissions. (Ex. 1 ¶ 60). From 2004 through 2011, Blazer caused CONCACAF to pay $6 million in commissions to Multisport Gaming Development. (*Id.*). As with the Sportvertising entities, these companies served as mere alter egos of Blazer, who dominated and controlled them for the sole purpose of facilitating bribe payments received by Warner and Blazer in a manner that would hide the true nature of the payments via these "shell companies." (*Id.*).

Warner and Blazer actively concealed the amounts of money funneled from CONCACAF's accounts into Warner and Blazer's personal accounts and the amounts of any compensation Blazer received. For example, Blazer, instead of paying himself and Warner directly, used his shell entities to avoid any appearance of impropriety and to conceal the fact that

5

both defendants were receiving bribes and kickbacks.  (*See e.g.*, Ex. 1 ¶ 44).  Warner and Blazer used a close associate of Warner to serve as CONCACAF's auditor, who assisted with concealing their fraudulent activity.  (*Id.* ¶¶ 68-69, 72).

## PROCEDURAL HISTORY

On April 18, 2017, Plaintiff filed this action to recover the substantial damages it incurred as a result of Defendants' criminal and tortious misconduct.  On May 12, 2017, Plaintiff sought the issuance of a Letter Rogatory in order to effect service of process on Warner pursuant to FRCP 4(f).  (Dkt. No. 8).  This Court executed the Letter on May 19, 2017.  (Ex. 6).  On May 22, 2017, Plaintiff sent its Summons, Complaint, 7.1 Disclosure, and the executed Letter Rogatory to the Registrar of the Supreme Court of Trinidad and Tobago, Port of Spain in accordance with Part 76.2 of Trinidad's Civil Proceedings Rules 1998 (as amended) (the "CPR").  (Ex. 7).  On June 16, 2017, Plaintiff received correspondence from the Assistant Registrar of the Supreme Court of Trinidad and Tobago declining to effect service on Warner and instructing that a Letter Rogatory from a United States District Court Judge did not comply with Part 76 of the CPR.  (Ex. 9).  The Assistant Registrar instructed that the request must be made through a Minister or Consulate.  (*Id.*).

On August 7, 2017, after Plaintiff's local counsel's ongoing correspondence with the Assistant Registrar, Plaintiff sent a letter to the Assistant Registrar requesting reconsideration of its compliance with Part 76.  (Ex. 8).  On August 9, 2017, the Assistant Registrar again declined to effect service.  (Ex. 9).  On August 21, 2017, in compliance with the Assistant Registrar's instructions, Plaintiff sent a letter to the Honourable Minister of Foreign and CARICOM Affairs (the "Minister"), seeking a recommendation to the High Court of Trinidad and Tobago that service be effected on Jack Warner.  (Ex. 10).  However, Plaintiff did not receive a response to this request. (Kuster Decl. ¶ 11).

On October 10, 2017, Plaintiff sent a second letter to the Minister, following up on its request seeking a recommendation to the High Court of Trinidad and Tobago that service be effected on Jack Warner.  (Ex. 11).  Unbeknownst to Plaintiff at that time, on October 4, 2017, service was effected on Warner in Trinidad.  Yet, Plaintiff again did not receive a response to its October 10 letter.  (Kuster Decl. ¶ 12).  It was not until March 13, 2019, that the Assistant Registrar informed local counsel that service was effected on Jack Warner on October 4, 2017.  (Ex. 12).  Prior to this communication, it had been Plaintiff's understanding that service upon Warner had not yet been effected.  (Kuster Decl. ¶ 13).  On March 18, 2019, Plaintiff received the process server's affidavit of service and the Registrar's Certificate.  According to the process server's affidavit, Plaintiff's pleadings were served on Jack Warner at Knox Street, Port of Spain in Trinidad and Tobago on October 4, 2017.  (Ex. 13).  The Acting Registrar certified that this personal service was made in accordance with Part 76 of the CPR. (Ex. 14).

After learning from the High Court of Trinidad on March 13, 2019 that service was effected on Warner on October 4, 2017, on April 4, 2019 CONCACAF requested a Certificate of Default from this Court.  (Dkt. No. 40).  On April 11, 2019, the Clerk of the United States District Court for the Eastern District of New York issued a Certificate of Default as to Warner.  (Dkt. No. 43).

CONCACAF respectfully requests that this Court grant its Rule 55 Motion for Default Judgment, and respectfully requests an inquest for damages by affidavit to be determined before this Court.

## **ARGUMENT**

## I.    **THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST JACK WARNER**

This Court should grant Plaintiff's Motion for Default Judgment.  CONCACAF properly served Jack Warner pursuant to FRCP 4 and Part 76 of the CPR by effecting service of the

Summons and Complaint on Warner in Trinidad.  Notwithstanding the fact that Warner was properly served, he failed to plead or otherwise defend the action within the time period allotted for a response or defense.  Further, because Warner's default was willful, he lacks any meritorious defenses, and Plaintiff would be prejudiced if its motion were not granted, Plaintiff is entitled to a Default Judgment against Warner.

### A.    CONCACAF Properly Served Warner

Plaintiff properly served process on Warner in Trinidad.  In order to properly serve a foreign party pursuant to FRCP 4(f)(2) where there is "no internationally agreed means," a plaintiff may serve a defendant  (A) "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction," (B) "as the foreign authority directs in response to a letter rogatory or letter of request," or (C) "unless prohibited by the foreign country's law, by (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."  *See Azikiwe v. Nigerian Airways Ltd.,* No. 03-CV-6387, 2005 WL 8160005, at \*4 (E.D.N.Y. Aug. 24, 2005), *report and recommendation adopted as modified*, No. 03-CV-6837, 2005 WL 8160004 (E.D.N.Y. Sept. 12, 2005); FRCP 4.

On May 19, 2017, the Court executed Plaintiff's requested Letter Rogatory to assist with foreign service on Warner in accordance with FRCP 4(f)(2).  (Ex. 6).  After sending the Letter Rogatory, along with the necessary papers for service, to the Registrar of the High Court of Trinidad, the Assistant Registrar directed CONCACAF to, instead, submit a request to the Minister for a recommendation of service to the High Court.  In accordance with that instruction, Plaintiff sent two letters to the Minister on August 21, 2017 and October 10, 2017, but received no response. (Exs. 10, 11; Kuster Decl. ¶¶ 11, 12).

However, unbeknownst to Plaintiff, a Marshal's Assistant of the Supreme Court of the Republic of Trinidad and Tobago performed service of process on Warner by personally delivering a copy of the Summons and Complaint to Warner on October 4, 2017, at Knox Street, Port of Spain in the island of Trinidad in the Republic of Trinidad and Tobago.  (Ex. 13).  On November 1, 2017, this personal service was certified as in accordance with Part 76 of the CPR by the Acting Registrar of the Supreme Court of the Republic of Trinidad and Tobago.  (Ex. 14).[4]  Plaintiff was not informed until March 13, 2019, that service was effected, despite multiple attempts at confirming service.  (Ex. 12; Kuster Decl. ¶ 13).  Thereafter, Plaintiff timely sought and received a Certificate of Default from this Court.  (Dkt. Nos. 40, 43). CONCACAF, acting pursuant to the instruction of the Trinidad High Court in response to its executed Letter Rogatory, properly served process on Warner in accordance with FRCP 4(f)(2)(B) and Part 76 of the CPR.  *See Chem. Waste Mgmt., Inc. v. Hernandez*, No. 95-CV-9650, 1997 WL 47811, at *2 (S.D.N.Y. Feb. 5, 1997) (finding service proper where it was "made as directed by the foreign authority in response to a letter rogatory or letter of request") (internal quotation marks omitted); *Sayles v. Pac. Engineers & Constructors, Ltd.*, No. 08-CV-676S, 2009 WL 791332, at *4 (W.D.N.Y. Mar. 23, 2009) ("plaintiff may effect service by Letter Rogatory and the method prescribed by" the foreign authority).  This Court should find that service was proper.

### B.   CONCACAF is Entitled to a Default Judgment Against Warner

Pursuant to Rule 12, a defendant must "serve an answer within 21 days after being served with the summons and complaint."  FRCP 12(a)(1)(A)(i).  Warner was required to file an answer

---

[4] While the Registrar's Certificate records a date of May 4, 2017 as the date of service, it is clear this is in error as we see the actual date of service is October 4, 2017 as recorded in the process server's affidavit and further supported by the March 13, 2019 email from the Assistant Registrar of the Supreme Court of Trinidad and Tobago.  (Exs. 12, 13).

or otherwise move with respect to the Complaint no later than October 25, 2017. *Id.* He failed to do so.

Where a party fails to "plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *D'Orange v. Feely*, 1996 WL 446254, at *2 (2d Cir. 1996); *U.S. v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citing FRCP 55(a)). After the issuance of the certificate of default, the party may "make an application for entry of default judgment." *Myers*, 236 F. Supp. 3d at 706; *Millennium TGA, Inc. v, Leon*, No. 12-CV-01360, 2013 WL 5719079, at *4 (E.D.N.Y. Oct. 18, 2013). "A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *Myers*, 236 F. Supp. 3d at 706 (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

When deciding a motion for default judgment, a court considers: "(1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Myers*, 236 F. Supp. 3d at 706 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

i    <u>Warner's Default was Willful</u>

In order to find that a party is in default, it is not necessary for a court to find "bad faith." In fact, "it is sufficient that the defendant defaulted deliberately." *U.S. v. Chesir*, 862 F. Supp. 2d 286, 290 (E.D.N.Y. 2012), *aff'd*, 526 F. App'x 60 (2d Cir. 2013) (citation omitted); *Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *5 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (finding "a defendant's

nonappearance and failure to respond sufficiently demonstrates willfulness."). "Courts have []

held a default to be willful when a defendant knew about the complaint and failed to respond."

*Artmatic USA Cosmetics, a Div. of Arthur Matney Co. v. Maybelline Co., a Div. of Schering*

*Plough,* 906 F. Supp. 850, 855 (E.D.N.Y. 1995) (citing *Marziliano v. Heckler,* 728 F.2d 151, 156

(2nd Cir. 1984)).

Warner's default was willful because he failed to file an answer or otherwise move in

response to CONCACAF's Complaint, despite having been properly served.  In fact, it is telling

that during the year and a half between actual service and this Court's entry of a Certificate of

Default, Warner has still not bothered to appear.  Properly effected service placed Warner on notice

of the Plaintiff's claims, and this Court should find Warner's failure to appear or respond to these

claims, despite having knowledge of them, to constitute a willful default.  *See Boster v. Braccia*,

No. 06-CV-4756, 2007 WL 708835, at *1 (E.D.N.Y. Mar. 6, 2007) (finding willful default where

defendant had adequate notice and failed to appear).

In addition to proper service through traditional means, the Complaint filed by

CONCACAF received national and international press coverage and was highly publicized by

major news outlets such that Warner would have also been aware of the lawsuit from other

sources.[5]

---

[5] *See* Matthew Guarnaccia, *Soccer Federation Sues Ex-Officials for Bribes and Kickbacks*, Law360 (Apr. 20, 2017), https://www.law360.com/articles/915267/soccer-federation-sues-ex-officials-for-bribes-kickbacks;   Liam   Daniel Pierce, *CONCACAF Sues Ex-Officials Jack Warner and Chuck Blazer for Embezzlement*, Vice Sports (Apr. 24, 2017), https://sports.vice.com/en_ca/article/nzxxpz/concacaf-sues-ex-officials-jack-warner-and-chuck-blazer-for-embezzlement; Mary Papenfuss, *Ex-Soccer Officials Hit with $20 Million Lawsuit Over Massive Bribery Scheme*, Huffington   Post   (Apr.   24,   2017),   https://www.huffingtonpost.com/entry/chuck-blazer-concacaf-soccer-lawsuit_us_58fd397ae4b06b9cb917c27e; *CONCACAF Sues Chuck Blazer and Jack Warner*, Caribbean News Weekly (Apr. 24, 2017), https://www.caribbeannationalweekly.com/sports/concacaf-sues-chuck-blazer-jack-warner/.

CONCACAF properly performed service on Warner on October 4, 2017. Despite this, Warner willfully defaulted, as he failed to respond or otherwise plead in connection with this matter within 21 days pursuant to FRCP 12(a)(1)(A)(i).

  ii  <u>Warner has no Meritorious Defense</u>

Warner lacks any meritorious defense to Plaintiff's claims. In addition, since Warner has failed to defend or otherwise appear in this action, the Court would be "unable to make a determination whether he has a meritorious defense to plaintiff's claims, which weighs in favor of granting a default judgment." *Myers*, 236 F. Supp. 3d at 707 (granting motion for default judgment where defendants failed to answer the complaint); *see also Caytas v. Maruszak*, No. 06-CV-985, 2009 WL 249377, at *2 (S.D.N.Y. Jan. 30, 2009) (finding it was "unable to determine whether Defendants have a meritorious defense . . . because they have presented no such defense to the Court"). The Court should find that Warner has defaulted, as he has presented no meritorious defense to Plaintiff's claims.

Where, as here, "a defendant has presented no defense to the court, the allegations in a plaintiff's complaint are deemed admitted." *Myers*, 236 F. Supp. 3d at 707-8 ("Where the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citing *Chen v. Jenna Lane, Inc.,* 30 F.Supp. 2d 622, 623 (S.D.N.Y. 1998)). Because Warner has defaulted, the allegations in Plaintiff's Complaint are deemed admitted, and CONCACAF need only demonstrate that "the allegations set forth in the complaint state valid claims." *Myers*, 236 F. Supp. 3d at 708. In deciding a motion for default judgment, a court "is required to accept all of the plaintiff's factual allegations as true and draw all reasonable inferences in its favor." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721, 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019), *report and recommendation*

12

*adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019) (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)).

CONCACAF's Complaint sets forth valid claims against Warner.   CONCACAF's Complaint alleges violations of Civil RICO, fraud and breaches of fiduciary duties – all of which are valid claims supported by numerous properly pled allegations of wrongful conduct committed by Warner and the Blazer Defendants.

Furthermore, while not needed, Plaintiff has ample evidence to support each claim it puts forth against Warner, including convincing evidence from his co-conspirator Chuck Blazer's guilty plea,[6] allocution and forfeiture in connection with the criminal acts associated to the aforementioned claims.   In Blazer's guilty plea, which is appended to the Complaint, Blazer admitted to committing two acts of racketeering conspiracy and the underlying acts of Criminal RICO including conspiracy to commit money laundering and wire fraud with a co-conspirator. (Ex. 5 at 30-33).   This activity serves as the underlying conduct for CONCACAF's Civil RICO claims against both Warner and Blazer, which are grounded in the same continuing scheme of bribes and kickbacks concerning the Gold Cup tournaments.   (*Id.*; s*ee e.g.,* Ex. 1 ¶¶ 40-46). Finally, much of the underlying fraud allegations in the Complaint are grounded in or significantly overlap with the Information and guilty plea, (Ex. 1 ¶¶ 131-135), including the use of the Blazer Entities to wire wrongful payments and commissions for Blazer and Warner's own personal use.

Further, the owner of a sports marketing company, who utilized that company for providing bribe payments to Warner in exchange for rights in connection with CONCACAF's Gold Cup,

---

[6] Even though Blazer is now deceased, his guilty plea did not abate upon his death, where he waived his right to appeal.  *See United States v. Brooks,* 872 F.3d 78, 88 (2d Cir. 2017).

also pled guilty to said bribery.  *United States v. Hawilla, et al.*, No. 14-CR-409, Dkt. No. 60 at 25-28 (E.D.N.Y Dec. 12, 2014).

As Warner has failed to appear and has no meritorious defense to plaintiff's well-pleaded and valid claims, this Court should grant Plaintiff's motion for default judgment.

iii        <u>Plaintiff will be Prejudiced if a Default is not Granted</u>

Plaintiff will be prejudiced if a default is not granted against Warner.  If CONCACAF's motion for default judgment were not granted, it would have no "additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, No. 06-CV-14226, Dkt. No. 18 (Jan. 26, 2009).  Without the entry of a default judgment, Plaintiff "would be unable to recover for the claims adequately set forth in the Complaint."  *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015).

Warner, with knowledge of the pending suit, willfully defaulted by failing to appear or respond.  Consequently, because Warner can present no meritorious defense and because denying the motion would be prejudicial to CONCACAF, CONCACAF respectfully requests that this Court grant its motion for a default judgment against Warner.

## II.    WARNER IS LIABLE TO CONCACAF FOR DAMAGES RESULTING FROM HIS WRONGFUL CONDUCT

Warner is liable to CONCACAF due to his participation in a pattern of racketeering activity and the fraud committed upon CONCACAF.  Warner is also liable for his breach of fiduciary duties owed to CONCACAF.

Once a default is established for the purpose of liability, a plaintiff must still prove damages.  *See Gutman v. Klein*, No. 03-CV-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages

remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  In determining damages not susceptible to simple mathematical calculations, Rule 55(b)(2) of the Federal Rules of Civil Procedure gives the court discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient.

In addition, "[t]he Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  *La Barbera v. Les Sub–Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  Accordingly, CONCACAF respectfully requests that the Court grant the motion for default judgment, and following the resolution of the motion, permit Plaintiff to provide evidence by affidavit without an in-person court hearing regarding the quantum of damages suffered by CONCACAF as a result of Warner's conduct.  *See Myers*, 236 F. Supp. 3d at 709.   When considering Plaintiff's damages, "[u]nder New York law, where defendants acted jointly and/or concurrently to produce a single injury, those defendants must be held jointly and severally liable for all of the harm resulting from their actions."  *Gov't Emp. Ins. Co. v. Infinity Health Prod., Ltd.*, No. 10-CV-5611, 2012 WL 1427796, at *10 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, No. 10-CV-5611, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).[7]   Additionally, "according to 18 U.S.C. § 1964(c), a person who is injured by a RICO violation may sue for 'threefold the damages he sustains.'

---

[7] Although CONCACAF was previously awarded a judgment from this Court in the amount of $20,000,000 against the Blazer Estate, Dkt. No. 42, CONCACAF is not likely to recover from the Blazer Estate due to Blazer's outstanding tax liability and a determination by the Superior Court of New Jersey that the Blazer Estate is insolvent. (Dkt No. 38, Ex. 1 at 2); *see also In re Estate of Charles G. Blazer*, No. R1279 (N.J. Super. Ct. Ch. Div. Feb. 26, 2019) (Order).

Treble damages are appropriate even on default." *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391, 2014 WL 527834, at *8 (E.D.N.Y. Feb. 7, 2014) (citing *Allstate Ins. Co. v. Howell*, No. 09-CV-4660, 2013 WL 5447152, at *7 (E.D.N.Y. Sept. 30, 2013)).

Plaintiff CONCACAF suffered the loss of millions of dollars due to Warner and Blazer's misuse and theft of funds. Blazer and Warner's use of the Blazer Entities to conceal the misappropriation of CONCACAF funds and the extraction of bribes from media companies and other football officials caused CONCACAF to suffer no less than $20 million in damages. Plaintiff is entitled to a judgment awarding damages for such losses during the period of time that Warner pilfered from Plaintiff CONCACAF's coffers in an amount to be determined at a hearing or through supplemental briefing before this Court. Pursuant to 18 U.S.C. § 1964(c), Plaintiff CONCACAF is entitled to recover threefold its damages, along with recovery of its costs and attorneys' fees expended in prosecuting this action as a result of the Defendants' pattern of racketeering activity.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant Plaintiff's Motion for Default Judgment, as well as such other and further relief as may be just and proper, including but not limited to setting a deadline for the submission of evidence by affidavit for an inquest on damages suffered as a result of the harm caused by Jack Warner's conduct.

Dated:  New York, New York
       June 4, 2019

By:     /s/ John J. Kuster
John J. Kuster
Pouneh Aravand
Patricia R. Butler
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel:  (212) 839-5300
Fax: (212) 839-5599
jkuster@sidley.com
paravand@sidley.com
pbutler@sidley.com

*Attorneys for Plaintiff*
*CONCACAF*

17