**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE CONFEDERATION OF NORTH, CENTRAL
AMERICAN AND CARIBBEAN ASSOCIATION
FOOTBALL,

                    Plaintiff,

              - against -

AUSTIN JACK WARNER, THE ESTATE OF
CHARLES BLAZER, ELIZABETH MANZO,
ESQ., Administrator CTA, substituted as parties on
behalf of CHARLES BLAZER,
SPORTVERTISING (NY), SPORTVERTISING
(CAYMAN), EN PASSANT LTD., EN
PASSANT INC., MULTISPORT GAMES
DEVELOPMENT INC.,

                 Defendants.

No. 1:17-CV-02304 (WFK) (SMG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**INQUEST FOR DAMAGES, ATTORNEY'S FEES, AND**
**PRE- AND POST-JUDGMENT INTEREST**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

I.   SUMMARY OF DAMAGES INCURRED BY CONCACAF AS A RESULT OF
     WARNER'S CRIMES AND IMPROPER CONDUCT......................................................3

    A.   Warner and Blazer Accepted Numerous Bribes During Their Tenure at
     CONCACAF, Causing CONCACAF $800,000 In Damages, for which Warner Is
     Liable .................................................................................................4

    B.   Warner and Blazer Misappropriated CONCACAF Funds by Unlawfully Paying
     Commissions, Fees to Blazer and Paying for Blazer's Personal Expenses, Causing
     $20,606,426.29 In Damages for which Warner is Liable ........................................6

II.  CONCACAF IS ENTITLED TO DAMAGES FOR WARNER'S UNLAWFUL
     CONDUCT ...........................................................................................8

    A.   Plaintiff is Entitled to an Award of Damages on the First and Second Causes of
     Action for Violation of 18 U.S.C. 1962(c) (Civil RICO) .....................................10

        i    CONCACAF  is Entitled to Treble Damages for The Illegal and Improper
         Payments Warner Allowed Blazer to Pay Himself....................................11

        ii   CONCACAF is Entitled to Treble Damages for the Bribes Obtained  by
         Warner and Blazer .................................................................12

    B.   Plaintiff is Entitled to an Award of Damages on the Fourth Cause of Action for
     Breach of Fiduciary Duty.......................................................................14

        i    CONCACAF  is Entitled to Damages For Warner's Breaches of Fiduciary
         Which Wrongly Allowed Blazer to be Receive Improper Commissions,
         Fees and Rent Payments ..........................................................15

        ii   CONCACAF is Entitled to an Award of Damages in the Amount of Bribes
         Received By Defendants...........................................................16

        iii  Warner Is Jointly and Severally Liable for Damages Resulting From
         Violation of His and Blazer's Fiduciary Duties.........................................16

C.     Plaintiff is Entitled to an Award of Damages on its Third Cause of Action for Fraud ..................................................................................................................17

III.    Plaintiff Is Entitled To Punitive Damages On Its Fraud And Breach Of Fiduciary Duty Claims Against Warner ...................................................................................................18

IV.    PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES .....................................................20

V.    PLAINTIFF IS ENTITLED TO AN AWARD OF PRE- AND POST-JUDGMENT INTEREST....................................................................................................................22

A.     Post-Judgment Interest.........................................................................................24

CONCLUSION...........................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*A I Marine Adjusters, Inc. v. M/V Siri Bhum*,
    No. 05-CV-7227, 2007 WL 760415 (S.D.N.Y. Feb. 8, 2007)................................................22

*Action S.A. v. Marc Rich & Co., Inc.*,
    951 F.2d 504 (2d Cir. 1991)...................................................................................................18

*Allstate Ins. Co. v. Aminov*,
    No. 11-CV-2391, 2014 WL 527834 (E.D.N.Y. Feb. 7, 2014) .......................................9, 11, 2

*Allstate Ins. Co. v. Nazarov*,
    No. 11 CV 6187, 2015 WL 5774459 (E.D.N.Y. Sept. 30, 2015) ..................................9, 11, 18

*Allstate Ins. Co. v. Yehudian*,
    No. 14-CV-4826, 2018 WL 1767873 (E.D.N.Y. Feb. 15, 2018)  ...........................................17

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*,
    522 F.3d 182 (2d Cir. 2007) ..................................................................................................21

*Cablevision Sys. New York City Corp. v. Lokshin*,
    980 F.Supp. 107 (E.D.N.Y. 1997) ....................................................................................3, 11

*Chao v. Merino*,
    452 F.3d 174 (2d Cir. 2006)..............................................................................................9, 17

*Cho v. Koam Med. Servs. P.C.*,
    524 F. Supp.2d 202 (E.D.N.Y. 2007) ...................................................................................21

*Chubb & Son Inc. v. Kelleher*,
    No. 92-CV-4484, 2006 WL 1789118 (E.D.N.Y. 2006) .........................................................22

*Chubb & Son Inc. v. Kelleher*,
    No. 92-CV-4484, 2010 WL 5978913 (E.D.N.Y. Oct. 22, 2010)............................................18

*City of N.Y. v. Bower*,
    No. 89-CV-4179, 1991 WL 19810 (S.D.N.Y. Feb. 1, 1991)............................................2, 15

*City of N.Y. v. Citisource, Inc.*,
    679 F. Supp. 393 (S.D.N.Y. 1988) .................................................................................13, 18

*City of NY v. Jam Consultants*,
    889 F. Supp. 103 (S.D.N.Y. 1995) ...........................................................................12

*Colavito v. New York Organ Donor Network, Inc.*,
    356 F. Supp.2d. 237 (E.D.N.Y. 2005) ...................................................................19

*Continental Mgmt. Inc. v. United States*,
    F. 2d 613 (1975) ........................................................................................................13, 18

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir. 1993) ......................................................................................3

*In re Crazy Eddie Securities Litig.*,
    948 F. Supp. 1154 (E.D.N.Y. 1996) .......................................................................22

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018)........................................................................................10

*D'Orange v. Feely*,
    894 F. Supp. 159 (S.D.N.Y. 1995) .......................................................................11

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)........................................................................................11

*Deng v. 278 Gramercy Park Grp LLC*,
    No. 12-CV-7803, 2014 WL 1016853 (S.D.N.Y. Mar. 14, 2014) ...........................22

*Donemar Inc. v. Molloy*,
    252 N.Y. 360 (1930) ...............................................................................................13

*Dorn v. Berson*,
    No. 09–CV–2717, 2012 WL 1004907 (E.D.N.Y. Mar. 1, 2012) ...........................19

*ECDC Environmental LC v. New York Marine and Gen. Ins. Co.*,
    No. 96-CV-6033, 1999 WL 595450 (S.D.N.Y. Aug. 6, 1999)................................22

*Evans v. Ottimo,*
    469. F.3d 278 (2d Cir. 2006) ...................................................................19

*Fairfield Fin. Mortg. Grp., Inc. v. Luca*,
    No. 06-CV-5962, 2017 WL 9481826 (E.D.N.Y. May 16, 2017) ...........................9

*Fertitta v. Knoelder Gallery*, *LLC*,
    NO. 14-CV-2259, 2018 U.S. Dist. LEXIS 177074 (S.D.N.Y. Oct. 15, 2018) .......................20

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763 (2d Cir. 1994) ...................................................................17

*Fleurentin v. McDowell*,
    No. 05-CV-4274, 2009 WL 2969686 (E.D.N.Y. Sept. 16, 2009) ...........................19

*Fustok v. ContiCommodity Services, Inc.,*
    873 F.2d 38 (2d Cir. 1989) ...................................................................9

*Gesualdi v. Ava Shypula Testing & Inspection, Inc.*,
    No. 13-CV-1873, 2014 WL 1399417 (E.D.N.Y. Apr. 10, 2014) ...........................3

*Gov't Emp. Ins. Co. v. Infinity Health Prod., Ltd.*,
    No. 10-CV-5611, 2012 WL 1427796 (E.D.N.Y. Apr. 6, 2012) ........................9, 11

*Gov't Emps. Ins.. v. Scheer*,
    No. 13-CV-4039, 2014 WL 4966150 (E.D.N.Y. 2014) ........................................11

*Grace v. E.J. Kozin Co.,*
538 F.2d 170 (7th Cir. 1976) .................................................................13

*Grant v. Martinez*
973 F.2d 96 (2d. Cir. 1992) ...................................................................21

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
    973 F.2d 155 (2d Cir.1992).....................................................................3

*Gully v. Nat'l Credit Union Admin. Bd.*,
    341 F.3d 155 (2d Cir. 2003)...................................................................14

*H & R Indus., Inc. v. Kirshner,*
    899 F. Supp. 995 (E.D.N.Y. 1995) ...................................................................19

*Henderson v. Rep-Tech, Inc.,*
    557 N.Y.S.2d 224 (N.Y. App. Div. 1990) ..........................................................15

*Henry v. Concord Limousine, Inc.,*
    No. 13-CV-0494, 2014 WL 297303 (E.D.N.Y. Jan. 24, 2014) ..............................16

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)........................................................................................21

*Katsaros v. Cody,*
    744 F.2d 270 (2d Cir. 1984)............................................................................17

*Lama Holding Co. v. Smith Barney Inc.,*
    668 N.E.2d 1370 (N.Y. 1996)..........................................................................17

*Lamdin v. Broadway,*
    272 N.Y. 133 (1936) .................................................................................15, 16

*Lewis v. S.L. & E., Inc.,*
    831 F.2d 37 (2d Cir. 1987) .............................................................................22

*Lewis v. Whelan,*
    99 F.3d 542 (2d Cir. 1996)..............................................................................24

*Lukaszuk v. Sudeen,*
    No. 02-CV-5143, 2007 WL 4699018 (E.D.N.Y. Nov. 27, 2007) .....................18, 20

*Marfia v. T.C. Ziraat Bankasi,*
    147 F.3d 83 (2d Cir. 1998)..............................................................................22

*Millea v. Metro-North R.R. Co.,*
    658 F.3d 154 (2d Cir. 2011)............................................................................21

*Nat'l Grp for Communc'ns v. Lucent Tech,*
    420 F. Supp. 2d 253 (S.D.N.Y. 2006)...............................................................13

*New Amsterdam Capital Partners LLC v. Krasovsky,*
  No. 12-CV-7621, 2016 WL 11271871 (S.D.N.Y. Feb. 23, 2016)...........................................24

*Novartis Corp. v. Luppino,*
  221 B.R. 693 (Bankr. S.D.N.Y. 1998) ......................................................................13

*Nuss v. Sabad,*
  976 F.Supp.2d. 231 (N.D.N.Y. 2013)........................................................................14

*Pacific Westeel, Inc. v. D & R Installation,*
  No. 01-CV-0293, 2003 WL 22359512 (S.D.N.Y. Oct. 17, 2003)...........................................23

*Phansalkar v. Andersen Weinroth & Co., L.P.,*
  344 F.3d 184 (2d Cir. 2003).........................................................................14, 15, 16

*Philip Morris, Inc. v. Grinnell Lithographic Co.,*
  67 F. Supp. 2d 126 (E.D.N.Y. 1999) .......................................................................13

*Phoenix Four, Inc. v. Strategic Resources Corp.,*
  No. 05-CV-4837, 2006 WL 399396 ........................................................................14

*PSG Poker, LLC. v. DeRosa-Grund,*
  No. 06-CV-1104, 2008 WL 2755835 (S.D.N.Y. July 14, 2008)...........................................20

*Rocanova v. Equitable Life Asur. Soc. of U.S.,*
  634 N.E.2d 940 (N.Y. 1994)...............................................................................19

*S.T. Grand, Inc. v. City of New York,*
  298 N.E.2d 105 (N.Y. 1973)...............................................................................18

*Schipani v. McLeod,*
  541 F.3d 158 (2d Cir. 2008)..............................................................................24

*Sierra Rutile Ltd. v. Katz,*
  No. 90-CV-4913,1996 ....................................................................................16

*SimplexGrinnell v. McCann,*
  No. 11-CV-5192, 2012 WL 4511404 (E.D.N.Y. Aug. 31, 2012...........................................15

*SimplexGrinnell, LLP v. McCann*,
No. 11-CV-5192, 2012 WL 4587356 (E.D.N.Y. Sept. 28, 2012) ...........................................15

*Sony Music Entm't Inc. v. Pedestal Prods., Inc.*,
No. 01-CV-4033, 2002 WL 1226861 (S.D.N.Y. Apr. 9, 2002) ...........................................3, 9

*Time Warner Cable v. Barnes*,
13 F.Supp.2d 543 (S.D.N.Y.1998) ...........................................3

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Co.*,
109 F.3d 105 (2d Cir. 1997)...........................................9

*Twenty First Century L.P. I v. LaBianca*,
No. 92-CV-2913 (ILG), 2001 WL 761163 (E.D.N.Y. May 2, 2001)...........................................18

*Western Elec. Co. v. Brenner*,
*41 N.Y.2d 291 (1997)* ...........................................14

**Statutes**

18 U.S.C. § 1962(c) ...........................................3, 4, 6, 10

18 U.S.C. § 1964(c) ...........................................11, 20

28 U.S.C. 1961...........................................24

**Other Authorities**

CPLR 5001...........................................23

CPLR 5002-04 ...........................................23

FRCP 54(d)(2) ...........................................20

Plaintiff, the Confederation of North, Central American, and Caribbean Association Football ("CONCACAF" or "Plaintiff"), by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Support of its Inquest for Damages, Attorney's Fees, and Pre- and Post-Judgment Interest against Defendant Austin "Jack" Warner.[1]

## PRELIMINARY STATEMENT

Defendants Austin "Jack" Warner  ("Warner") and Charles "Chuck" Blazer ("Blazer"), together, in their respective roles as President and General Secretary of CONCACAF, committed crimes and conspired with one another in breach of their respective fiduciary duties for their own personal enrichment.  Blazer admitted his criminal activity, and his estate settled with CONCACAF.[2]  Warner knowingly elected to default, which is not surprising, as he had no meritorious defense to CONCACAF's claims.  As a result of Defendants' criminal scheme, fraud and breaches of their fiduciary duties, CONCACAF incurred tens of millions of dollars in expenses and losses it never would have suffered but for Warner's participation in these schemes – money that otherwise could have been used to benefit CONCACAF's many member associations, their football (soccer) pitches, and youth and development programs.  Instead, Warner took bribes and allowed Blazer to charge massive amounts of commissions, fees, and personal expenses to which he was not entitled, in order to ensure Blazer would also facilitate Warner's corrupt self-dealings.

---

[1] Referenced throughout are the Declarations filed in support of CONCACAF's Damages Inquest of John J. Kuster ("Kuster Decl."), and Daniel Ventricelli, the BDO partner who managed the forensic accounting for CONCACAF regarding this matter ("BDO Decl."), together with the exhibits attached to each.

[2] On April 1, 2019, Plaintiff filed with this Court a Mutual Settlement Agreement and Release and its accepted Offer of Judgment from the Estate of Charles Blazer, Elizabeth Manzo, Esq., Administrator CTA (together, the "Blazer Estate"), substituted in the action in the place of the Blazer Defendants.  (Dkt. Nos. 38, 41).  On April 5, 2019, the Court entered a judgment of $20,000,000 in favor of Plaintiff against the Blazer Estate.  (Dkt. No. 42).  However, CONCACAF is not likely to recover from the Blazer Estate due to Blazer's outstanding tax liability and a determination by the Superior Court of New Jersey that the Blazer Estate is insolvent. (Dkt No. 38, Ex. 1 at 2); *see also In re Estate of Charles G. Blazer*, No. R1279 (N.J. Super. Ct. Ch. Div. Feb. 26, 2019) (Order).

1

Warner and Blazer effectuated their schemes by using several shell entities (which the Blazer Estate admitted were alter-egos of Blazer (Dkt No. 48)), including but not limited to Sportvertising (NY), Sportvertising (Cayman), En Passant Ltd., En Passant Inc., and Multisport Games Development Inc. (the "Blazer Entities," together with Blazer, the "Blazer Defendants", and collectively with Warner, the "Defendants").

Warner was duly served with a copy of the Complaint and Summons in this action, whose filing received press coverage, including in Trinidad.   On June 24, 2019, the Court held a hearing and entered an order granting Plaintiff's Motion for Default Judgment against Warner, who has failed to appear or otherwise defend this action, despite having been served over a year and a half ago.  (Dkt. No. 48).  Plaintiff now seeks to recover damages from Warner to redress the harms caused by Defendants' fraudulent, unfair, and unlawful acts which were perpetrated throughout the entire period Warner and Blazer served as the highest-ranking officials of CONCACAF. CONCACAF seeks a judgment for damages from this Court against Warner for a total amount of $79,146,771.75, plus an award of post-judgment interest broken down as follows.  The amount of compensatory damages CONCACAF seeks under its Civil RICO claim is $21,406,426.29, which as explained below should be trebled, resulting in the amount of $64,219,278.87, plus $237,992.63 in attorney's fees and $14,689,500.25 in pre-judgment interest as well as an award of post-judgment interest.   Alternatively, pursuant to its common law claims, CONCACAF seeks $21,406,426.29 in compensatory damages, plus punitive damages in the amount of $42,812,852.58, plus $237,992.63 in attorney's fees and $14,689,500.25 in pre-judgment interest and an award of post-judgment interest.

I. **SUMMARY OF DAMAGES INCURRED BY CONCACAF AS A RESULT OF WARNER'S CRIMES AND IMPROPER CONDUCT**

Warner's criminal activities and misconduct caused CONCACAF to incur substantial damages. Where a defendant has defaulted in answering the complaint, the plaintiff's "well-pleaded allegations concerning issues other than damages must be accepted as true." *Sony Music Entm't Inc. v. Pedestal Prods., Inc.*, No. 01-CV-4033, 2002 WL 1226861, at *1 (S.D.N.Y. Apr. 9, 2002) (citing *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir.1993)); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992); *Time Warner Cable v. Barnes*, 13 F.Supp.2d 543, 547 (S.D.N.Y.1998). Additionally, "'[a] default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct.'" *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873, 2014 WL 1399417, at *4 (E.D.N.Y. Apr. 10, 2014) (quoting *Cablevision Sys. New York City Corp. v. Lokshin,* 980 F.Supp. 107, 111 (E.D.N.Y.1997)).

On June 24, 2019, this Court entered an order granting Plaintiff's Motion for Default Judgment against Warner. (Dkt. No. 48). Consequently, Plaintiff's well-pleaded allegations in its Complaint must be accepted as true. *See Sony Music Entm't Inc.*, No. 01-CV-4033, 2002 WL 1226861, at *1.

CONCACAF is entitled to damages to redress the harms caused by Warner's violations of 18 U.S.C. § 1962(c) ("Civil RICO"), as well as his fraud against and breaches of fiduciary duties to CONCACAF. During their tenure, Warner and Blazer accepted bribes and kickbacks from CONCACAF's business partners in exchange for awarding lucrative contracts to those partners without the knowledge of CONCACAF's Executive Committee or Congress. (Compl. ¶¶ 32, 72). Warner and Blazer also sold CONCACAF's vote to select the host of the 2010 World Cup in exchange for bribes for their personal enrichment. (Compl. ¶¶ 47-56). Warner also knowingly

and willfully allowed Blazer to pilfer CONCACAF's coffers by misappropriating CONCACAF funds in other ways, using several shell entities, including the Blazer Entities, to obfuscate the true purpose of these payments.  (Compl. ¶¶ 32-36).  For example, Warner allowed commissions and fees to be paid to several of the Blazer Defendants during the entirety of the period both Warner and Blazer were accepting and facilitating each other's bribe payments – ill-gotten gains which Blazer was not entitled to due to his criminal activity.  (Compl. ¶ 60).  Warner and Blazer also improperly used CONCACAF funds for Blazer's personal expenses including rent for several luxury apartments located in New York – none of which was properly disclosed either.  (Compl. ¶ 62).

### A. Warner and Blazer Accepted Numerous Bribes During Their Tenure at CONCACAF, Causing CONCACAF $800,000 In Damages, for which Warner Is Liable

Warner engaged in numerous acts of wire and mail fraud (among other predicate crimes), in violation of 18 U.S.C. § 1962(c).  As explained below, CONCACAF is entitled to $800,000 in damages from Warner that it incurred as a result of his Civil RICO violations, an amount which constitutes the minimum amount of bribe payments Warner and Blazer procured as part of the Gold Cup bribery scheme.  (Compl. ¶ 40; J. Kuster Decl.: Ex. A, Ex. B).

Beginning in 1993, Warner and his co-conspirator Blazer, entered into negotiations with Jose Hawilla, owner of a sports marketing and media company, to sell CONCACAF's media rights in connection with CONCACAF's Gold Cup tournament in exchange for bribe payments (the "Gold Cup Scheme").  (Compl. ¶ 40).  Hawilla paid bribes in the "six-figure range" to Warner and Blazer, in exchange for Blazer's execution of the contract in October 1994.  (Compl. ¶ 40; J. Kuster Decl.: Ex. A, Ex. B).  This agreement covered the 1996, 1998, and 2000 Gold Cups.  (Compl. ¶ 41.).  Subsequently, Blazer, on behalf of himself and Warner, accepted additional bribe payments

of "hundreds of thousands of dollars" from Hawilla in exchange for the sale of CONCACAF's media rights for the 2002 and 2003 Gold Cups.  (Compl. ¶ 42; J. Kuster Decl.: Ex. D).

In exchange for Blazer's execution of the second media rights agreement, Blazer and Warner received a $200,000 bribe payment in March 1999.  (Compl. ¶ 44; J. Kuster Decl.: Ex. A at 39-41; Ex. B at 98)).  Following that payment, on or about April 23, 1999, Blazer wired $100,000 to a bank account controlled by Warner.  (Compl. ¶ 44).  In February 2003, Blazer and Warner also received a $600,000 bribe payment in connection with the second media rights agreement. (Compl. 45; J. Kuster Decl. Ex.A; Ex. B).  Blazer pled guilty to racketeering conspiracy, wire fraud, and money laundering conspiracy charges in connection with this scheme in a high-profile related criminal action brought in the Eastern District of New York.  (Kuster Decl. Ex. D at 29-33).  Hawilla also pled guilty to racketeering conspiracy charges in connection with this scheme in this same action.  (J. Kuster Decl. Ex. E at 25-28).

Warner and Blazer acted jointly to unjustly enrich themselves, fraudulently depriving CONCACAF of its right to the true value of its Gold Cup media rights contracts by accepting these bribe payments.  (Compl. ¶ 131).  Both were entrusted with CONCACAF's media rights pursuant to their roles at CONCACAF but fraudulently diverted a portion of the value of those rights to their own personal use, with intent to defraud and concealing the bribe payments from the Executive Committee.  (Compl. ¶ 133).  To its detriment, CONCACAF reasonably relied on Warner and Blazer's representations that the contract value and the selection of the media rights companies were fair and free of corruption.  (Compl. ¶ 140).[3]

---

[3] Warner and Blazer also engaged in a separate act of bribery when they accepted $10 million in illicit payments in exchange for their vote for South Africa to host the 2010 World Cup (the "2010 World Cup Scheme"). (Compl. ¶¶ 47-56; J. Kuster Decl.: Ex. D at 31).  Warner and Blazer breached their fiduciary duties by voting in favor of their own pecuniary interests and against the interest of CONCACAF.  Although CONCACAF is not claiming the bribe amounts set forth in this scheme as damages, this scheme constitutes further evidence that Warner breached his

**B.  Warner and Blazer Misappropriated CONCACAF Funds by Unlawfully Paying Commissions, Fees to Blazer and Paying for Blazer's Personal Expenses, Causing $20,606,426.29 In Damages for which Warner is Liable**

From at least 1996 to 2011, Warner and Blazer jointly acted in furtherance of their criminal enterprise by unlawfully funneling $20,606,426.29 of CONCACAF funds directly to Blazer and the Blazer Entities or otherwise to Blazer's benefit and for his personal expenses.  Warner and Blazer caused these payments to be made to Blazer despite the fact that they were unauthorized and despite the fact that throughout this entire period, Warner and Blazer were accepting bribe payments through the Gold Cup Scheme as well as the 2010 World Cup Scheme.  Warner improperly allowed these funds to be paid directly or indirectly to Blazer so Blazer would look the other way regarding Warner's own fraudulent and criminal activity.  These funds were paid in the form of commissions, fees, and rent which were unlawful and unauthorized, in furtherance of Defendants' criminal enterprise to personally enrich themselves, and in breach of their fiduciary duties, defrauding CONCACAF, and violating 18 U.S.C. § 1962(c).  CONCACAF is entitled to $20,606,426.29 in damages from Warner, reflecting the amount of the commission, fee and rent payments made to Blazer.  The precise calculation of these damages was performed by CONCACAF's forensic accountants at BDO, a prominent national accounting firm.  (*See* BDO Decl. ¶¶ 24-52).

BDO calculated that from 1996 to 2011, Warner and Blazer caused $15,317,753.54 in commissions and $4,451,629.08 in fees to be paid to Blazer.  (BDO Decl. ¶ 53).  During this entire period, Warner and Blazer were accepting bribe payments, defrauding CONCACAF, engaging in a racketeering conspiracy and breaching their fiduciary duties to CONCACAF.   Warner and

---

fiduciary duties to CONCACAF, and denied CONCACAF its rights to honest services.

Blazer passed these payments in part through Blazer's shell entities, hindering discovery of his compensation.  (Compl. ¶¶ 33, 58-59; BDO Decl.: Ex. C, D, H, I).

Warner caused CONCACAF to enter into an agreement with Sportvertising in 1990 after Warner was elected president of CONCACAF (the "Sportvertising Contract"). (Compl. ¶ 58).  The Sportvertising Contract was later renewed in 1994 with a termination date set for July 17, 1998. (*Id.*).  While Blazer originally received authorization from the CONCACAF Executive Committee to compensate himself in the form of commissions in 1990, Blazer, as a fiduciary of CONCACAF, with Warner's help, failed to obtain authorization for any compensation paid after the expiration of the Sportvertising Contract on July 17, 1998.  (Compl. ¶ 58).   Warner and Blazer paid Blazer commissions and fees for an additional thirteen years after the expiration of the Sportvertising Contract – none of which was properly disclosed to or authorized by the CONCACAF Executive Committee. (*Id.*)

However, even putting aside the fact that Warner and Blazer failed to obtain approval for the millions of dollars of Blazer's continued compensation, Blazer and Warner were committing crimes during their entire tenure at CONCACAF through their self-dealing and bribery schemes. (Compl. ¶ 59).  As explained below, because Blazer was never entitled to any of the compensation he received from CONCACAF, these payments constitute a loss incurred by CONCACAF and Warner is directly and joint and severally liable for these payments.

Further, in order to conceal such payments from the CONCACAF Executive Committee and to obfuscate the total amount of his unauthorized compensation, Blazer paid commissions and fees not just to Sportvertising but to several other Blazer Entities.

For example, Blazer caused CONCACAF to pay En Passant Inc., and En Passant Ltd., nearly $2.5 million in commissions from 1996 through 2011. (BDO Decl. Ex. B).  From 2004

through 2011, Blazer caused CONCACAF to pay $6 million in commissions to Multisport Gaming Development.  Blazer also paid "fees" to these entities including an additional $1.7 million to En Passant Inc., and En Passant Ltd., as well as $760,000 in fees to Multisport Gaming Development. (BDO Decl. Ex. G). As with the Sportvertising entities involved in the Gold Cup and World Cup schemes above, these entities simply existed to receive payments on behalf of Blazer. CONCACAF's former controller who executed these payments described them as "shell companies" to act as fronts for Blazer's payment of moneys. Blazer also structured these payments into smaller tranches to avoid detection. (Compl. ¶ 60; BDO Decl. Exs. B, G).  Blazer also received $4,451,629.08 in fees and passed many of these payments through his shell entities, hindering discovery of his compensation. (Compl. ¶ 58; D. BDO Decl. ¶ 35).  He also debited from the commissions and fees payable account payments to fund his lavish lifestyle, including his American Express credit card, totaling $3,096,094.05, rent and housekeeping for his Trump Tower apartments.  (Compl ¶ 62; BDO Decl. ¶ 25).  Warner also improperly allowed Blazer to charge $837,000 in rent payments for three separate apartments at Trump Tower in Manhattan, one of which was used by Blazer's girlfriend, and then later by Blazer's cats.  (Compl. ¶¶ 62-64).

These improper commission, fee, and rent payments were not disclosed to the CONCACAF Executive Committee and were actively concealed by Warner and Blazer.  Indeed, as part of the scheme, Warner provided his personal accountant to assist with concealment of all the financial improprieties engaged in by the two co-conspirators.  (Compl. ¶ 68).

## II.  <u>CONCACAF IS ENTITLED TO DAMAGES FOR WARNER'S UNLAWFUL CONDUCT</u>

The Court already has authorized CONCACAF to proceed to prove its damages at an inquest by affidavit, which the Court may do so long as it is able to (i) determine the proper rule

for calculating damages on the claim, and (ii) CONCACAF's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment. *See Sony Music*, 2002 WL 1226861, at *2 (internal citations omitted).  In determining damages, the Court may rely on affidavits and/or documentary evidence in evaluating the fairness of the sum requested. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Co.,* 109 F.3d 105, 11 ((2d Cir. 1997) (citing *Fustok v. ContiCommodity Services, Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)).

Warner's criminal acts, breaches of fiduciary duty and fraud make him directly liable for the damages his misconduct caused to CONCACAF.  Moreover, "[u]nder New York law, where defendants acted jointly and/or concurrently to produce a single injury, those defendants must be held jointly and severally liable for all of the harm resulting from their actions." *Gov't Emp. Ins. Co. v. Infinity Health Prod., Ltd.*, No. 10-CV-5611, 2012 WL 1427796, at *10 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, No. 10-CV-5611, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).  Courts allow joint and several liability under Civil RICO, breach of fiduciary duty and fraud.  *See Chao v. Merino*, 452 F.3d 174, 179-81 (2d Cir. 2006); *Allstate Ins. Co. v. Nazarov*, No. 11 CV 6187, 2015 WL 5774459, at *17 (E.D.N.Y. Sept. 30, 2015); *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391, 2014 WL 527834, at *8 (E.D.N.Y. Feb. 7, 2014).  Warner is directly, and/or jointly and severally liable, for the damages he allowed Blazer, his co-conspirator, to commit against CONCACAF.  Warner and Blazer's conduct underlying their Civil RICO violations, fraud and breaches of fiduciary duties are "intimately related to one another and, indeed, are a part of the same scheme." *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, No. 06-CV-5962, 2017 WL 9481826, at *2 (E.D.N.Y. May 16, 2017).

CONCACAF is entitled to the damages under each of its claims, but recognizes that these damages overlap with each other.  CONCACAF therefore seeks a judgment in the maximum

amount of damages, plus appropriate interest and attorney's fees, to which it is entitled but does not seek to have the same damages awarded more than once.  However, because it is highly likely CONCACAF will have to seek to enforce its judgment in overseas jurisdictions, CONCACAF requests that the Court's judgment reflect the amount of compensatory damages to which it is entitled, and separately identify the trebling or punitive damages, pre- and post- judgment interest, and attorney's fees, in the event such foreign courts may require the elements of this Court's judgment be separately identified.

Accordingly, CONCACAF respectfully requests this Court enter a judgment for CONCACAF against Warner for damages pursuant to its RICO claim comprising of: $21,406,426.29 in compensatory damages, which as explained below should be trebled, resulting in the amount of $64,219,278.87, plus $237,992.63 in attorney's fees and $14,689,500.25 in pre-judgment interest (*see infra* at V), for a total amount of $79,146,771.75, as well as an award of post-judgment interest.  However, if the Court declines to award Civil RICO damages, CONCACAF respectfully requests this Court enter judgment for damages pursuant to its common law claims, comprising of: $21,406,426.29 in compensatory damages, $42,812,852.58 in punitive damages plus $237,992.63 in attorney's fees and $14,689,500.25 in pre-judgment interest, amounting to the same total award amount of $79,146,771.75, as well as an award of post-judgment interest.

### A. Plaintiff is Entitled to an Award of Damages on the First and Second Causes of Action for Violation of 18 U.S.C. 1962(c) (Civil RICO)

Plaintiff is entitled to an award of damages for Warner's violations of 18 U.S.C. § 1962(c). To collect damages under Civil RICO, the plaintiff must show "(1) that Defendant violated section 1962 and (2) that she suffered an injury to her 'business or property'... [and] (3) that her injury was caused 'by reason of' the RICO violation." *D'Addario v. D'Addario,* 901 F.3d 80, 96 (2d Cir.

2018) (internal citation omitted).  The third prong requires plaintiff to show that "the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." *DeFalco v. Bernas*, 244 F.3d 286, 329 (2d Cir. 2001) (internal citations omitted).

Warner's violations of Civil RICO caused an injury to CONCACAF's business.  Moreover, CONCACAF's "damages were proximately caused by" Warner's conduct. *Cablevision City Corp. v. Lokshin,* 980 F.Supp. 107, 111 (E.D.N.Y.1997).   Where, as here, there is a default judgment, it is appropriate for an injured plaintiff to recover under Civil RICO "threefold the damages he sustains." 18 U.S.C. § 1964(c); *Gov't Emps. Ins. Co.*, No. 10-CV-5611, 2012 WL 1427796, at *9 (citing *D'Orange v. Feely,* 894 F. Supp. 159, 163 (S.D.N.Y. 1995));  *see also Aminov*, No. 11-CV-2391, 2014 WL 527834, at *8 (citing *Allstate Ins. Co. v. Howell*, No. 09-CV-4660, 2013 WL 5447152, at *7 (E.D.N.Y. Sept. 30, 2013)).

Defendants who participate in RICO enterprises "should be held jointly and severally liable with other participants in that particular scheme."  *Nazarov*, 2015 WL 5774459, at *17 (explaining that "[a]lthough the Second Circuit has not specifically addressed the issue of joint and several liability in civil RICO cases, it has allowed joint and several liability in a criminal RICO case"). *See also Gov't Emps. Ins.. v. Scheer,* No. 13-CV-4039, 2014 WL 4966150, at *11 (E.D.N.Y. 2014) ("[J]oint and several liability [is] properly imposed under RICO."); *Aminov,* 2014 WL 527834, at *8 ("Joint and several liability is available in RICO cases"; collecting cases).  Warner is therefore also jointly and severally liable for all of Blazer's misconduct under Civil RICO.

      i      <u>CONCACAF  is Entitled to Treble Damages for The Illegal and Improper Payments Warner Allowed Blazer to Pay Himself</u>

A defendant's compensation "may be recovered from the employee under RICO" where there is an agency relationship and defendant "either fails to perform his duties or performs them

corruptly." *City of NY v. Jam Consultants,* 889 F. Supp. 103, 105 (S.D.N.Y. 1995) (internal citation omitted); *see also City of N.Y. v. Bower*, No. 89-CV-4179 , 1991 WL 19810, at *2 (S.D.N.Y. Feb. 1, 1991) (granting a damages award of three times the defendant's salary under Civil RICO for the time period of his disloyalty).  Not only is compensation to an unfaithful employee a cognizable injury under RICO, but also, "the lost 'value of salaries… paid to faithless employees… [can be] proximately caused by the defendants' predicate acts of bribery" under RICO.  *Jam Consultants,* 889 F. Supp. at 106.

Warner, together with Blazer, conspired against CONCACAF and engaged in a pattern of racketeering, which consisted of numerous acts of mail and wire fraud, money laundering, and money laundering conspiracy.  (Compl. ¶ 83).  Thus, the compensation paid to Blazer during the period of employment at CONCACAF for which Warner and Blazer were so blatantly disloyal is a calculable injury proximately caused by Defendant's violation of Civil RICO.  Blazer was employed by CONCACAF from 1990 to 2011 (Compl. ¶ 5; Kuster Decl. Ex. D at 29-30) and from at least 1996 to 2011, Blazer admitted he committed criminal acts of mail fraud, wire fraud, and money laundering.  (Compl. at 3; Kuster Decl. Ex. D at 31).  Also during this period, Blazer was compensated (directly and indirectly through the Blazer Entities) via a number of methods including commissions, fees, and rent.  (Compl. ¶¶ 58, 62).  From 1996 to 2011, CONCACAF paid Blazer $15,317,753.54 in commissions, $4,451.629.08 in fees, and $837,043.67 in rent expenses, for a total of $20,606,426.29.  (BDO Decl. ¶ 53).

ii      CONCACAF is Entitled to Treble Damages for the Bribes Obtained  by
        Warner and Blazer

Separate and apart from the damages Warner caused CONCACAF to incur as a result of his scheme with Blazer concerning the unlawful "compensation" paid to Blazer, Warner also is liable under Civil RICO for the bribes or "kickback payments" he illegally received in connection

12

with the Gold Cup tournaments. *Nat'l Grp for Communc'ns v. Lucent Tech*, 420 F. Supp. 2d 253, 260-61 (S.D.N.Y. 2006).  "The defrauded principal is entitled to recover as damages the value of the bribes" under RICO.  *City of N.Y. v. Citisource, Inc.,* 679 F. Supp. 393, 398 (S.D.N.Y. 1988) (explaining that the plaintiff was likely to succeed on the merits of the claim to recover the amount of bribes paid to its agents through RICO).  Further, bribe payments constitute a loss because, "there is a legal presumption that, at a minimum" a contract's purchase price is "inflated by the amount of the bribes and, accordingly, the bribe amounts are recoverable as damages." *Philip Morris, Inc. v. Grinnell Lithographic Co.*, 67 F. Supp. 2d 126, 130 (E.D.N.Y. 1999) (citing *Grace v. E.J. Kozin Co.,* 538 F.2d 170, 173–74 (7th Cir. 1976); *Continental Mgmt. Inc. v. United States*, 208 Ct. Cl. 501, 527 F.2d 613, 618 (1975) ("[I]t is enough to show the fact and amount of the bribes—nothing further need be alleged or proved by way of specific or direct injury."); *Novartis Corp. v. Luppino* (*In re Luppino* ), 221 B.R. 693, 703 n. 4 (Bankr. S.D.N.Y. 1998); *see also Donemar, Inc. v. Molloy,* 252 N.Y. 360, 365 (1930); *City of N.Y.v. Liberman,* 660 N.Y.S.2d 872, 875 (N.Y. App. Div. 1997)).

As shown above (*supra* at I(A)), during the course of Warner's unlawful mail fraud, wire fraud, and money laundering schemes, he and his co-conspirator Blazer received at least $800,000 in bribes in exchange for CONCACAF's Gold Cup contracts. (Compl. ¶ 90).  In addition, at a minimum, the purchase price of the Gold Cup contracts was underpaid by at least the $800,000 the media rights companies paid to Warner and Blazer for those rights instead of CONCACAF. (Compl.¶¶ 44-45; Kuster Decl. Exs. A ¶¶ 40-41, E at 28).  Because the Warner and Blazer bribe amounts are a clear and definite measure of damages, recoverable from Defendants in violation of Civil RICO, and Warner's schemes in violation of RICO proximately led to these payments, CONCACAF is entitled to treble $800,000 under RICO for the amount of illegal bribes Warner

and Blazer received in exchange for the CONCACAF Gold Cup contracts.  Blazer pled guilty in

the related criminal matter to racketeering conspiracy, wire fraud, and money laundering charges

in connection with the Gold Cup Scheme.  (Kuster Decl. Ex. D at 31).

Accordingly, CONCACAF is entitled to damages under Civil RICO in the amount of

$21,406,426.29 from Warner (which represents $20,606,426.29 in improper commissions, fees

and rent payments plus $800,000 in bribe payments).  CONCACAF respectfully submits that this

Court should treble these damages caused by Warner and his co-conspirator, and enter a damages

award in an amount equal to $64,219,278.87.

### B.  Plaintiff is Entitled to an Award of Damages on the Fourth Cause of Action for Breach of Fiduciary Duty

An agent or employee is obligated "to be loyal to his employer and is prohibited from

acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the

utmost good faith and loyalty in the performance of his duties."  *Phansalkar v. Andersen Weinroth*

*& Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (citation and internal quotation marks omitted).

"'[A]bsent an agreement otherwise, an employee who makes a profit or receives a benefit in

connection with transactions conducted by him on behalf of his employer is under a duty to give

such profit or benefit to his employer, whether or not it was received by the employee in violation

of his duty of loyalty.'"  *Id.* (citing *Western Elec. Co. v. Brenner,* 41 N.Y.2d 291, 295 (1977)). [4]

---

[4] CONCACAF is incorporated under Bahamian law.  (Compl. ¶ 3).  Bahamian law imposes a fiduciary duty upon officers and employees of corporate entities that is similar to the fiduciary duties New York law imposes on officers and employees of New York corporations.  *Compare Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05-CV-4837, 2006 WL 399396 at *8 (S.D.N.Y Feb. 21, 2006) ("Bahamian law imposes on directors, officers, and agents of a company the duty to 'act honestly and in good faith with a view to the best interest of the company and exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.'") *with Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003) (an officer "shall perform his duties ... in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances . . . and . . . honesty.").  Accordingly, this Court may consider New York precedent when analyzing the fiduciary duty claims.  *Nuss v. Sabad*, 976 F.Supp.2d. 231, 241 (N.D.N.Y. 2013).

As President and General Secretary of CONCACAF, Warner and Blazer owed fiduciary duties to the organization.  (Compl. ¶ 25; Kuster Decl. Ex. A ¶ 28).  They violated their fiduciary duties by engaging in various criminal activities, including fraud, bribery, and money laundering in pursuit of personal and commercial gain and by conspiring with and aiding and abetting each other in the abuse of their positions of trust.  (Compl. ¶ 35).

<blockquote>
i     CONCACAF  is Entitled to Damages For Warner's Breaches of Fiduciary Which Wrongly Allowed Blazer to be Receive Improper Commissions, Fees and Rent Payments
</blockquote>

When an agent or employee violates his fiduciary duties, he "forfeits his right to compensation for services rendered by him if he proves disloyal.'"  *Phansalkar,* 344 F.3d at 203 (citing *Lamdin v. Broadway,* 272 N.Y. 133, 138 (1936)).  "[A] disloyal employee, whose salary was not apportioned in his contract and whose disloyalty tainted his activities, must forfeit his entire salary for his period of disloyalty." *Bower*, 1991 WL 19810, at *2 (citing *Henderson v. Rep– Tech, Inc.,* 557 N.Y.S.2d 224 (N.Y. App. Div. 1990)).  Where an agent who violates his fiduciary duties incurs personal expenses unrelated to plaintiff's business purposes, the principal is also entitled to recover those expenses as damages.  *See SimplexGrinnell v. McCann*, No. 11-CV-5192, 2012 WL 4511404 at *3 (E.D.N.Y. Aug. 31, 2012), *report and recommendation adopted sub nom. SimplexGrinnell, LLP v. McCann*, No. 11-CV-5192 JS GRB, 2012 WL 4587356 (E.D.N.Y. Sept. 28, 2012).  As explained above (*supra* at II(A)), Warner, in breach of his fiduciary duties, allowed Blazer to pillage CONCACAF via their criminal activities, including accepting bribes, during the entirety of their respective tenures at CONCACAF, from at least 1996 to 2011. During this time, Blazer received $15,317,753.54 in commissions, $4,451.629.08 in fees, and $837,043.67 in rent expenses for apartments used by Blazer, unrelated to Plaintiff's business purposes.  (BDO Decl. ¶

53).  Accordingly, CONCACAF is entitled to Blazer's compensation from 1996 to 2011, which totals $20,606,426.29.

      ii      <u>CONCACAF is Entitled to an Award of Damages in the Amount of Bribes Received By Defendants</u>

When an agent violates his fiduciary duties, he "must… account to his principal for secret profits.'"  *Phansalkar,* 344 F.3d at 203 (citing *Lamdin,* 272 N.Y. at 138, 5 N.E.2d 66).  Secret profits, including bribes accepted by an agent, are recoverable by the principal where it is determined that an agent breached a fiduciary duty.  *See Henry v. Concord Limousine, Inc.*, No. 13-CV-0494, 2014 WL 297303, at *5 (E.D.N.Y. Jan. 24, 2014) ("under the faithless servant doctrine, an employer… is entitled to disgorge the value of any bribes or kickbacks received by a faithless employee"); *Sierra Rutile Ltd. v. Katz,* No. 90-CV-4913,1996 WL 556963, at *4 (S.D.N.Y. 1996) (same).

Warner and his co-conspirator, Blazer, as officers and agents of CONCACAF, entered into negotiations with sports marketing companies and agreed to award Gold Cup media rights contracts in exchange for bribes in the sum of at least six-figures.  (Kuster Decl. Ex. A ¶ 38).  In March 1999, one payment in the sum of $200,000 was transferred to one of Blazer's personal accounts and in February 2003, $600,000 was transferred to one Blazer's personal accounts as bribe payments for the sports media contracts. (Kuster Decl. Ex. A ¶¶ 40; 41).  Warner and Blazer shared portions of the bribe payments.  (Kuster Decl. Ex. A ¶ 42).  At all times, CONCACAF was unaware that such negotiations and payments had occurred.  (Compl. ¶ 43).  CONCACAF is entitled to recover at least $800,000 in bribe payments Warner and Blazer illegally received at CONCACAF's expense.

      iii     <u>Warner Is Jointly and Severally Liable for Damages Resulting From Violation of His and Blazer's Fiduciary Duties</u>

The Second Circuit routinely holds defendants jointly and severally liable for damages stemming from a breach of fiduciary duty.  *See Chao v. Merino*, 452 F.3d 174, 179-81 (2d Cir. 2006) (affirming the District Court's holding of joint and several liability for damages resulting from the breach of the fiduciary duty of loyalty and care); *Katsaros v. Cody*, 744 F.2d 270, 277 (2d Cir. 1984) (same).  As explained above, CONCACAF incurred substantial damages as a result of Warner's and Blazer's breaches of fiduciary duties.   Accordingly a damages award against Warner should be entered in the amount of $21,406,426.29 (which represents $20,606,426.29 in improper commissions, fees and rent payments Warner allowed Blazer to be paid in breach of his fiduciary duties, plus $800,000 in bribe payments).  As mentioned above, CONCACAF is seeking compensatory damages against Warner on its common law claims in the alternative to the compensatory damages requested by CONCACAF pursuant to its Civil RICO claim, and CONCACAF respectfully requests that the Court indicate the judgment against Warner that such damages are available on its common law claims as an alternative as well.

### C. Plaintiff is Entitled to an Award of Damages on its Third Cause of Action for Fraud

For a claim of damages on a cause of action for fraud in New York, "[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the out-of-pocket rule." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373-74 (N.Y. 1996) (citations omitted); *see Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826, Slip Copy 2018 WL 1767873, at *17 (E.D.N.Y. Feb. 15, 2018) ("New York applies the "out-of-pocket" rule when calculating damages as a result of common law fraud.") (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)) (further citation omitted).

CONCACAF is entitled to recover from Warner the illegal bribe payments and its out-of-pocket expenditures associated with improper payments of commissions, fees and rent payments

he allowed to be made to Blazer directly or indirectly as damages on its fraud claim.  *City of New York v. Citisource, Inc.*, 679 F. Supp. 393, 398 (S.D.N.Y. 1988) (holding that where "a contract is procured through bribes to an agent of one of the contracting parties, the defrauded principal is entitled to recover as damages the value of the bribes and the amounts paid under the fraudulently procured contract," and awarding plaintiff damages in the amount of bribes (citing *Continental Mgmt. Inc.*, 527 F.2d at 616-17)); *S.T. Grand, Inc. v. City of New York*, 298 N.E.2d 105, 108 (N.Y. 1973) (plaintiff entitled to money paid under contract)); *see Twenty First Century L.P. I v. LaBianca*, No. 92-CV-2913 (ILG), 2001 WL 761163, at *2-*3 (E.D.N.Y. May 2, 2001) (evidence established $1,308,500 in total kickbacks, which the court considered "out-of-pocket" losses). [5]

In the end, however, the damages CONCACAF incurred as a direct result of Warner's fraud are the same as those caused by Warner's breach of fiduciary duty claim.  As such, CONCACAF requests that the Court enter a judgment reflecting its right in the alternative to recover compensatory damages in this amount pursuant to its fraud claim as well.

### III.   PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES ON ITS FRAUD AND BREACH OF FIDUCIARY DUTY CLAIMS AGAINST WARNER

Finally, CONCACAF is entitled to a punitive damages award on its common law claims. Generally, New York law permits courts to award punitive damages in cases where the defendant is shown to have engaged in "gross, wanton or willful fraud, or other morally culpable conduct." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 509 (2d Cir. 1991).  It is well settled that

---

[5] Warner also is jointly and severally liable for Blazer's fraud as well.  *See Lukaszuk v. Sudeen*, No. 02-CV-5143, 2007 WL 4699018, at *6 (E.D.N.Y. Nov. 27, 2007) (citing *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, No. 00 CV 7532, 2002 WL 461574, at *3 (S.D.N.Y. Mar.26, 2002) (recommending joint and several liability against defendants for, *inter alia,* fraud claims)); *Nazarov*, 2015 WL 5774459, at *17 ("In a scheme where there are repeated fraudulent acts by multiple defendants, [the] plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused." ) (citation omitted); *Chubb & Son Inc. v. Kelleher*, No. 92-CV-4484, 2010 WL 5978913, at *6 (E.D.N.Y. Oct. 22, 2010) (same).

"[p]unitive damages are permitted under New York law for torts such as breach of fiduciary duty, fraud, and conversion." *Dorn v. Berson*, No. 09–CV–2717, 2012 WL 1004907, at *6 (E.D.N.Y. Mar. 1, 2012).  Plaintiff is entitled to punitive damages under New York law for its breach of fiduciary duty and fraud claims.

Punitive damage for claims based on breach of fiduciary duty are recoverable where there is gross misconduct; in other words, "'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Dorn*, 2012 WL 1004907 at *6 (quoting *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006)); *see Rocanova v. Equitable Life Asur. Soc. of U.S.*, 634 N.E.2d 940 (N.Y. 1994). Similar to claims based on breach of fiduciary duty, punitive damages for claims based on fraud are recoverable where, as here, "the fraud alleged is gross and involves high moral culpability.'" *Fleurentin v. McDowell*, No. 05-CV-4274, 2009 WL 2969686, at *10 (E.D.N.Y. Sept. 16, 2009) (quoting *Colavito v. New York Organ Donor Network, Inc.*, 356 F.Supp.2d 237, 240 (E.D.N.Y. 2005)). Importantly, punitive damages are also available for fraud "where the parties' relationship was fiduciary or confidential." *Fleurentin*, 2009 WL 2969686 at *10 (citing *H & R Indus., Inc. v. Kirshner*, 899 F. Supp. 995, 1012 (E.D.N.Y. 1995)).

Defendants' conduct of disregard and dishonesty throughout their entire tenure at CONCACAF reached criminal levels and were directly adverse to Plaintiff's best interests, particularly with regard to Defendants' acceptance of bribes in exchange for their vote for the host country for the 2010 World Cup, the acceptance of bribes in connection with the Gold Cup contracts, and the misappropriation of millions of dollars of CONCACAF's funds to compensate Blazer.  Warner quite clearly conducted himself in a wanton and depraved manner, with self-interest, self-promotion and greed as his compass, knowing he was depriving many of CONCACAF's member associations from receiving much needed funding for their youth and

19

development programs, and infrastructure and league developments, especially member associations in countries that had little independent means to raise the necessary funding directly themselves.

Courts have varied in amounts of punitive damages awards, but, at a minimum, a two-to-one ratio is appropriate in this case in light of the brazen criminal activity Warner engaged in, which had a devastating effect on CONCACAF and its member associations. *See, e.g.*, *PSG Poker, LLC. v. DeRosa-Grund*, No. 06-CV-1104, 2008 WL 2755835 *5 (S.D.N.Y. July 14, 2008) (awarding punitive damages 2-1); *Lukaszuk*, No. 02-cv-5143, 2007 WL 4699018, at *10 (E.D.N.Y. Nov. 27, 2007) (awarding punitive damages "three times the compensatory damages"). CONCACAF therefore requests that the Court award punitive damages in an amount equal to two times that of the compensatory damages award due to the egregious nature of Warner's fraudulent conduct, for an amount of punitive damages equal to $42,812,852.58. As mentioned above, CONCACAF recognizes that if the Court awards it treble damages in connection with its Civil RICO claims, its request for punitive damages would overlap and thus requests the judgment reflect this part of the award in the alternative.

## IV.   PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES

This Court should grant CONCACAF's request for attorney's fees pursuant to 18 U.S.C. § 1964(c) and FRCP 54(d)(2). As a result of this Court granting Plaintiff's motion for default judgment against Warner, Plaintiff has prevailed and is therefore entitled to reasonable attorney's fees. See Fertitta v. Knoelder Gallery, LLC, NO. 14-CV-2259, 2018 U.S. Dist. LEXIS 177074, at *5–*6 (S.D.N.Y. Oct. 15, 2018) (awarding the plaintiff attorney's fees where the court entered a default judgment against the defendant).

Plaintiff seeks reasonable attorney's fees amounting to $237,992.63, which is well within

the range mandated by this Court. The party seeking attorney's fees must establish the fee is "presumptively reasonable" by demonstrating the billed rates and hours are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The rate sought must be an amount a "reasonable, paying client would be willing to pay," which is then multiplied by the reasonable number of hours expended. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir.2007)).

Most importantly, the rate sought must adhere to the "Forum Rule," which requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 193 (citation omitted). CONCACAF has retained a prominent national law firm, Sidley Austin LLP, as its counsel in this matter. CONCACAF's counsel has expertise in addressing civil and criminal investigatory work and representation of clients in cases such as these. (Kuster Decl. ¶ 11). Its rates are likewise commensurate with other New York City and National law firms engaged in complex litigation of this nature. *Id.*

In determining the reasonableness of the number of hours expended by CONCACAF's counsel, the Court should assess whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp.2d 202, 209 (E.D.N.Y. 2007) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). In so doing, a court "uses [its] experience with the case, as well as [its] experience with the practice of law . . . to exclude hours that were excessive, redundant, or otherwise unnecessary to the litigation due to, for example, overstaffing." *Id.* (internal quotations and citations omitted).

The hours spent by Plaintiff's counsel in this lawsuit were reasonably necessary. This complex lawsuit was costly, fact-intensive, and of the utmost stakes that has garnered international attention. Defendants' criminal misconduct have cost Plaintiff tens of millions of dollars and have

21

forever stained its reputation before a global audience.  (Kuster Decl. ¶ 13).

Plaintiff has supplied contemporaneous time records detailing the date, hours expended, and nature of the work done by each person recording time as required. *See* (Kuster Decl. Ex. F). Plaintiff has therefore satisfied the contemporaneous records requirement and entitled to the requested attorney's fee.

## V.   PLAINTIFF IS ENTITLED TO AN AWARD OF PRE- AND POST-JUDGMENT INTEREST

CONCACAF is entitled to pre-judgment interest on its Civil RICO, fraud and breach of duty claims.  "The purpose of prejudgment interest is to compensate plaintiffs for the use of funds that were wrongfully diverted by the defendant." *Chubb & Son Inc. v. Kelleher*, No. 92-CV-4484, 2006 WL 1789118, at *6 (E.D.N.Y. 2006) (*citing Lewis v. S.L. & E., Inc.*, 831 F.2d 37, 40 (2d Cir. 1987)).

The Court should apply state law to an award of pre-judgment interest in this matter.  If there is both federal question and diversity jurisdiction, courts have the discretion to apply state or federal law concerning interest but must apply state law to any supplemental/pendent state law claims. *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998); *ECDC Environmental LC v. New York Marine and Gen. Ins. Co.*, No. 96-CV-6033 (BSJ), 1999 WL 595450, at *11 (S.D.N.Y. Aug. 6, 1999).

Pursuant to New York law, courts award pre-judgment interest under successful fraud and breach of fiduciary duty claims.  *See Deng v. 278 Gramercy Park Grp LLC*, No. 12-CV-7803, 2014 WL 1016853, at *10 (S.D.N.Y. Mar. 14, 2014); *In re Crazy Eddie Securities Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996); *A I Marine Adjusters, Inc. v. M/V Siri Bhum*, No. 05-CV-7227, 2007 WL 760415, at *5, *8 (S.D.N.Y. Feb. 8, 2007); s*ee also* CPLR 5001.  Under the appropriate circumstances, courts award pre-judgment interest on Civil RICO claims.  *Aminov*, 2014 WL

527834 at *9 (awarding prejudgment interest under Civil RICO, applying New York's interest rate) (citing *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 495 (6th Cir.2013)).

Under New York law, pre-judgment interest is calculated at a 9% simple interest rate, and is calculated "from (1) the date when each portion of damages was incurred or (2) a single reasonable intermediate date which can be used to simplify calculations." *Pacific Westeel, Inc. v. D & R Installation*, No. 01-CV-0293, 2003 WL 22359512, at *3 (S.D.N.Y. Oct. 17, 2003); *see* CPLR 5001(b), 5002-04. Accordingly, this Court should award a 9% simple interest rate on the compensatory damages award of $21,406,426.29 (which would be the same amount awarded under Civil RICO or Plaintiff's common law claims). Here, CONCACAF respectfully submits that the Court should exercise its discretion and apply New York's pre-judgment interest law to the Civil RICO claims. Warner's conduct was brazen and transparently for his own self-interest at the expense of those he promised to serve. Indeed, there can be no doubt that Warner's conduct wrongly prevented CONCACAF and its member associations from using the tens of millions of dollars he and Blazer wrongly diverted to themselves for more than 20 years for the promotion and development of football throughout the CONCACAF region, including in underserved countries in the Caribbean and Central America, where those funds were particularly needed.

Instead of seeking the full amount of pre-judgment interest, in the event the Court awards treble damages or punitive damages, CONCACAF is only seeking pre-judgment interest from November 10, 2011, the end date of Warner and Blazer's last scheme injuring CONCACAF, to June 24, 2019, the date this Court entered judgment in CONCACAF's favor on its Motion for Default. Therefore, CONCACAF respectfully requests this Court enter a prejudgment interest award pursuant to damages awarded under either CONCACAF's Civil Rico claim or its common law claims in an amount equal to $14,689,500.25.

### A. Post-Judgment Interest

Post judgment interest is available for all claims in federal courts as a matter of right, and its calculation is statutorily prescribed by federal law. *See* 28 U.S.C. 1961. *See also New Amsterdam Capital Partners LLC v. Krasovsky*, No. 12-CV-7621, 2016 WL 11271871, at *14 (S.D.N.Y. Feb. 23, 2016). The broad provision has been interpreted by courts to state that an "award of postjudgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996). *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). 28 U.S.C. 1961 also governs the calculation of post-judgment interest, "from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." 28 U.S.C. 1961(a). "Interest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. 1961(b). Because it is granted as a matter of right for civil cases in federal court, post-judgment interest should be granted here pursuant to 28 U.S.C. 1961.

### <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter a judgment for CONCACAF against Warner for $21,406,426.29 in compensatory damages, which trebled or added with punitive damages, should equal $64,219,278.87, plus $237,992.63 in attorney's fees and $14,689,500.25 in pre-judgment interest, for a total amount of $79,146,771.75, as well as an award of post-judgment interest.

Dated:  New York, New York
          July 3, 2019

                                                    By:  ___/s/ John J. Kuster
                                                    John J. Kuster
                                                    Pouneh Aravand
                                                    Patricia R. Butler
                                                    Heidi Savabi
                                                    SIDLEY AUSTIN LLP
                                                    787 Seventh Avenue
                                                    New York, NY 10019
                                                    Tel: (212) 839-5300
                                                    Fax: (212) 839-5599
                                                    jkuster@sidley.com
                                                    paravand@sidley.com
                                                    pbutler@sidley.com
                                                    hsavabi@sidley.com

                                                    *Attorneys for Plaintiff*
                                                    *CONCACAF*